Paul TOURADJI, Appellant,

v.

BEACH CAPITAL PARTNERSHIP, L.P., Playa Oil & Gas GP, LLC, Playa Oil & Gas, LP, and Gary M. Beach, Appellees.

No. 01–09–00403–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 8, 2010.

Elizabeth Ann Fitzwater, Sean O'Brien, Arkin Kaplan Rice LLP, New York, NY, Jeffrey A. Potts, Smyser Kaplan & Vesel-ka, L.L.P., Houston, TX, for Appellant.

Robert Louis Theriot, Liskow & Lewis, Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices ALCALA and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

In this interlocutory appeal, appellant, Paul Touradji, appeals the trial court's order denying his special appearance.[1] Appellees, Beach Capital Partnership, L.P., Playa Oil & Gas GP, LLC, Playa Oil & Gas, LP, and Gary M. Beach (collectively, "plaintiffs") sued Touradji, a New York resident, and Touradji's business Deep-Rock Venture Partners, LP, alleging claims for interference with contract and economic relations, fraud, breach of fiduciary duty, slander and libel, and intentional infliction of emotional distress. Touradji filed a special appearance that the trial court denied. In two issues, Touradji contends the trial court erred by denying his special appearance because he is not subject to either specific or general jurisdiction in Texas. We conclude that Touradji is not subject to general jurisdiction in Texas but that he is subject to specific jurisdiction for some of the claims against him. More specifically, Touradji established minimum contacts with Texas and the claims for interference with contract, fraud, and breach of fiduciary duty sufficiently relate to those contacts to subject Touradji to personal jurisdiction in Texas. We also conclude plaintiffs failed to plead sufficient jurisdictional allegations concerning the claims for slander and libel and for intentional infliction of emotional distress to subject Touradji to personal jurisdiction in Texas. We affirm in part, reverse in part and remand this case to the trial court.

1. *See* TEX. CIV. PRAC. & REM.CODE ANN § 51.014(a)(7) (Vernon 2008) (authorizing in-

## Background

This case involves a dispute over ownership of Playa Oil & Gas, LP, a Texas limited partnership, as well as control of its ongoing operations.

### A. Overview of Entities Involved

Playa Oil & Gas, LP ("Playa LP") is a Texas limited partnership with its principal place of business in Houston, Texas. Playa LP was established in 2005 by Gary M. Beach, a Texas resident, and Paul Touradji, a New York resident, through other entities as described below. The partners of Playa LP are its general partner, Playa Oil & Gas GP, LLC ("Playa GP"), and its limited partners, Beach Capital Partnership, L.P. ("Beach Capital") and DeepRock Venture Partners, LP ("Deep-Rock"). Playa GP owns 0.1% of Playa LP, while Beach Capital owns 19.9% and DeepRock owns 80%.

Playa GP is a Texas limited liability company with its principal place of business in Houston, Texas. Playa GP, as the general partner of Playa LP, operates Playa LP and manages its business affairs. Playa GP is run by four managers, one appointed by Beach and the remaining three by DeepRock. Touradji is a manager of Playa GP and, prior to this controversy, Beach was a manager and the CEO. Playa GP is wholly owned by Beach.

Beach Capital is a Texas limited partnership. Its principal place of business is Houston, Texas. Beach owns 100% of Beach Capital.

DeepRock is a Delaware limited partnership with its principal place of business in New York. Touradji indirectly owns 100% of DeepRock. DeepRock was created for the purpose of becoming a partner in Playa LP, for Touradji to manage his investment in Playa LP.

terlocutory appeal of order denying special appearance).

## B. The Controversy

In 2008, after Playa LP had been operating almost three years, Touradji and DeepRock sought to restructure the parties' relationship. Touradji and DeepRock declined to make any further investment in Playa LP unless DeepRock received 100% of Playa LP's revenues until DeepRock's entire investment had been recovered. In May 2008, Beach and Beach Capital executed an "Amended and Restated Agreement of Limited Partnership." Touradji and DeepRock did not execute the agreement. Touradji and DeepRock also did not make any further investment in Playa LP.

Touradji, as one of the managers of Playa GP, authorized the sale of Playa LP assets, specifically, real property in East Texas, for approximately $41 million. Touradji also authorized the distribution of the $41 million in proceeds to DeepRock, but no distribution was made to the other limited partner, Beach Capital. By the terms of the partnership agreement, approximately $8.2 million of the proceeds should have been distributed to Beach Capital.

On September 26, 2008, Beach learned that the "Amended and Restated Agreement of Limited Partnership" had not been executed by Touradji or DeepRock. Beach and Beach Capital withdrew their consent to the amended agreement.

Plaintiffs filed this suit on October 1, 2008. A few days later, Touradji, acting on behalf of DeepRock, approved the "Amended and Restated Agreement of Limited Partnership" of Playa LP and appointed new managers of Playa GP, including re-appointing himself as manager. On October 10, 2008 Touradji, acting for DeepRock, sent a letter to plaintiffs in Texas notifying plaintiffs that he had appointed new managers and accepted new regulations for Playa GP.

On October 15, Touradji and the managers he had appointed removed Beach from control of the partnership, stripping him of his status as a manager and CEO. From the time of the October meeting, plaintiffs contend that Touradji and DeepRock have refused to cooperate in the operations of the partnership and "continued in their breaches of their duties to plaintiffs," including preventing plaintiffs from receiving their fair share of revenue and destroying the remaining value of the partnership.

## C. Special Appearance in the Trial Court

Touradji filed a special appearance asserting he is not subject to personal jurisdiction in Texas. Specifically, in his special appearance Touradji contends that he is not subject to specific jurisdiction in Texas because plaintiffs failed to plead sufficient jurisdictional allegations and he did not purposefully avail himself of the privilege of conducting business in Texas. Touradji also asserts his contacts with Texas are not extensive enough to subject him to general jurisdiction. In support of his special appearance, Touradji filed an affidavit in which he avers he is not a Texas resident, does not maintain a place of business in Texas, and does not own real property in Texas. Touradji also states he either made or received approximately 10 telephone calls with people in Texas and visited Texas approximately five times concerning the business of Playa LP.

## Personal Jurisdiction and Special Appearance

### A. Standard of Review

A legal conclusion concerning the existence of personal jurisdiction is a question of law subject to de novo review, but that conclusion must sometimes be preceded by the resolution of underlying factual

disputes. *Am. Type Culture Collection Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex.2002); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). "When . . . the trial court does not issue fact findings, we presume that the trial court resolved all factual disputes in favor of its ruling." *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 445 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (citing *Am. Type Culture Collection*, 83 S.W.3d at 805–06). However, "we review de novo if the underlying facts are undisputed or otherwise established." *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 113 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.).

## B. Law of Special Appearance

■ A plaintiff bears the initial burden of pleading allegations sufficient to bring a non-resident defendant within the terms of the Texas long-arm statute. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex.2010); *Am. Type Culture Collection*, 83 S.W.3d at 807. To establish jurisdiction over a nonresident defendant, the plaintiff must plead a "connection between the defendant['s] alleged wrongdoing and the forum state." *Kelly*, 301 S.W.3d at 655. In a tort case, the plaintiff must plead that the defendant committed a tortious act in Texas. *Id.* at 659; *Ji–Haw Indus. Co., Ltd. v. Broquet*, —— S.W.3d ——, —— (Tex.App.-San Antonio 2008, no pet. h.)

■ If the plaintiff pleads sufficient jurisdictional allegations, the nonresident defendant then assumes the burden of negating all bases of jurisdiction in those allegations. *Kelly*, 301 S.W.3d at 658; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex.2007). If the plaintiff does not plead sufficient jurisdic-

tional facts, the defendant meets its burden to negate jurisdiction by proving it is not a Texas resident. *Kelly*, 301 S.W.3d at 658–59. The plaintiff's original pleadings as well as its response to the defendant's special appearance can be considered in determining whether the plaintiff satisfied its burden. *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 249 n. 7 (Tex.App.-Houston [1st Dist.] 2004, pet. denied). In conducting our review, we accept as true the allegations in the petition. *Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 839 (Tex.App.-Houston [14th Dist.] 2008, pet. denied).

## C. The Law of Personal Jurisdiction

■ A court may assert personal jurisdiction over a non-resident defendant if the requirements of the Due Process Clause of the United States Constitution [2] and the Texas long-arm statute [3] are both satisfied. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996). "Because the Texas long-arm statute reaches 'as far as the federal constitutional requirements of due process will allow,' the statute is satisfied if the exercise of personal jurisdiction comports with federal due process." *Preussag Aktiengesellschaft*, 16 S.W.3d at 113 (quoting *CSR, Ltd.*, 925 S.W.2d at 594). We thus examine only whether a Texas court's exercise of jurisdiction over Touradji would comport with the requirements of federal due process. *See id.*

■ To meet the requirements of federal due process, "the nonresident defendant must have purposefully established such minimum contacts with the forum state that it could reasonably antici-

---

2. U.S. Const. amend. XIV, § 1.

3. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 2008).

pate being sued there."[4] *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). "If the nonresident defendant has purposefully availed itself of the privileges and benefits of conducting business in a state, it has sufficient contacts to confer personal jurisdiction." *Id.* (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183). "Random, fortuitous, or attenuated contacts do not suffice." *Id.* (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183).

 To assess whether a non-resident defendant has purposefully availed himself of the privileges and benefits of conducting business in Texas, we examine three factors. *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 785 (Tex.2005). First, only the defendant's own actions may constitute purposeful availment; a defendant may not be haled into a jurisdiction based solely on the unilateral activities of a third party. *Id.* (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183). Second, the defendant's acts must be purposeful, and a showing of random, isolated, or fortuitous contacts is insufficient. *Id.* (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)). Third, a defendant must seek some benefit, advantage, or profit through his purposeful availment, because jurisdiction is based on notions of implied consent; that is, by seeking the benefits and protections of a forum's laws, a non-resident consents to suit there. *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). The purposeful availment test should focus on "the defendant's efforts to avail itself of the forum" and not "the form of the action chosen by the plaintiff." *Moki Mac,* 221 S.W.3d at 576.

 Minimum-contacts analysis is further divided into specific personal jurisdiction and general jurisdiction. *Preussag Aktiengesellschaft,* 16 S.W.3d at 114.

## 1. Specific Jurisdiction

 A court may exercise specific personal jurisdiction over a non-resident defendant if (1) the non-resident purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there and (2) the controversy arises out of or is related to the non-resident's contacts with the forum state. *Freudensprung v. Offshore Tech. Servs., Inc.,* 379 F.3d 327, 343 (5th Cir.2004). The non-resident defendant's purposeful conduct, not the unilateral acts of the plaintiff, must have caused the contact. *See Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414, 104 S.Ct. at 1872. Foreseeability of an injury in Texas is not solely determinative, *Michiana Easy Livin' Country,* 168 S.W.3d at 789, but foreseeability of causing injury is "an important consideration" in deciding whether a nonresident defendant has purposefully established minimum contacts. *BMC Software,* 83 S.W.3d at 795.

 Even if a non-resident has purposefully availed himself of the benefits of conducting business in Texas, there is no specific jurisdiction over the non-resident unless the cause of action "arises from or is related to an activity conducted within the forum." *BMC Software,* 83 S.W.3d at 796. We focus our analysis on the relationship among the non-resident, the fo-

4. Due process also requires that the exercise of personal jurisdiction over a nonresident defendant comport with fair play and substantial justice. *Preussag Aktiengesellschaft v. Coleman,* 16 S.W.3d 110, 113 (Tex.App.-Houston [1st Dist.] 2000, pet. dismd w.o.j.). Touradji does not assert that the exercise of personal jurisdiction over him would violate fair play and substantial justice. We therefore do not address this issue.

rum, and the litigation to determine if the alleged liability arises from or is related to an activity conducted in Texas. *Counter Intelligence, Inc. v. Calypso Waterjet Sys., Inc.*, 216 S.W.3d 512, 517 (Tex.App.-Dallas 2007, no pet. h.). The focus of the examination must be the nature of the contacts and the "nexus" that these contacts create with the forum state. *McDermott v. Cronin*, 31 S.W.3d 617, 621–22 (Tex.App.-Houston [1st Dist.] 2000, no pet.). The "arises from or is related to" requirement of specific personal jurisdiction requires a "substantial connection" between the nonresident defendant's contacts and the "operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 584–85. That is, the nonresident's conduct must have been purposely directed towards or have occurred in the forum and must have a "substantial connection" with the litigation's operative facts. *Id.; Glattly*, 177 S.W.3d at 447.

### 2. General Jurisdiction

■■■■■ General jurisdiction does not require that the cause of action relate directly to the defendant's contacts with the forum. *Preussag Aktiengesellschaft*, 16 S.W.3d at 114 (citing *CSR, Ltd.*, 925 S.W.2d at 595). To negate general jurisdiction a defendant must show that its contacts in Texas were not "continuous and systematic." *Id.* To support general jurisdiction, the defendant's forum activities must have been "substantial," which requires stronger evidence of contacts than for specific jurisdiction. *Id.* The Texas supreme court has described it as a "more demanding minimum contacts analysis." *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007) (quoting *CSR, Ltd. v. Link*, 925 S.W.2d at 595). "Usually, 'the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there;

activities that are less extensive than that will not qualify for general in personam jurisdiction.'" *Id.* (quoting 4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1067.5 (2007)).

### Analysis

#### A. General Jurisdiction

■■■■ In his first issue, Touradji asserts the trial court erred by denying his special appearance because he is not subject to general jurisdiction in Texas. As noted above, general jurisdiction requires more substantial contacts with Texas than specific jurisdiction. *PHC–Minden*, 235 S.W.3d at 168. Here, the plaintiffs' petition contains no allegations that Touradji had any longstanding or substantial business activities in Texas—such as marketing or shipping products or maintaining an office here. *See id.* Accordingly, Touradji's affidavit asserting he is not a Texas resident is sufficient to negate general jurisdiction as a basis for the trial court's exercise of personal jurisdiction. *See Kelly*, 301 S.W.3d at 659. We sustain Touradji's first issue.

#### B. Specific Jurisdiction

■■■■ As a threshold matter, Touradji asserts we must examine his special appearance concerning specific jurisdiction on a claim-by-claim basis. Although the Texas supreme court did not hold that specific jurisdiction must be analyzed for each specific claim, in *Kelly*, it analyzed the sufficiency of the jurisdictional allegations of the plaintiff's claims separately. *See Kelly*, 301 S.W.3d at 660 (addressing jurisdictional allegations for fraud claim separately from claim under Texas Property Code). In addition, the Fifth Circuit has held that the "arise from or related to" portion of the specific jurisdiction analysis must be conducted on a claim-by-claim basis to comply with due process when the

claims are based on different forum contacts. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir.2006) (citing cases from First, Third, Eight, and Ninth Circuits); *see also Barnhill v. Automated Shrimp Corp.*, 222 S.W.3d 756, 767 (Tex.App.-Waco 2007, no pet.) (following *Seiferth*). However, when separate claims are based on the same forum contacts, a separate analysis of each claim is not required. *See Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F.Supp.2d 435, 442 (W.D.Tex.2007) (distinguishing *Seiferth* on basis that plaintiff's claims all arose from same set of forum contacts); *see also Davis Invs., VI, LP v. Holtgraves*, No. 14–08–00222–CV, 2009 WL 975961, at *12 n. 7 (Tex.App.-Houston [14th District] Feb. 26, 2009, pet. denied) (agreeing "with other courts that generally a specific-jurisdiction analysis should be performed on a claim-by-claim basis" but declining to do so because plaintiff's claims all arose from same facts and defendant asserted single basis for his special appearance to each claim). In this case, neither party provides any argument or analysis concerning whether these claims arise from the same forum contacts or different ones. Plaintiffs' pleadings do not clearly show that all the claims arise out of the same facts. Plaintiffs' live petition contains a background section making certain allegations, but it also has separate sections for each cause of action that appear to discuss other allegations, so it is unclear whether those separate sections are discussing the same underlying facts for all the claims. We therefore examine the sufficiency of the jurisdictional allegations of each claim against Touradji separately in our specific jurisdiction analysis.[5] *See Kelly*, 301 S.W.3d at 659–60. As discussed below, we conclude that not all of plaintiffs' claims—specifically, the claims for slander and libel and for intentional infliction of emotional distress—are supported by sufficient jurisdictional allegations. The remaining claims for interference with contract and economic relations, fraud, and breach of fiduciary duty are based, in large part, upon the same contacts with Texas, namely, Touradji's involvement with the ongoing operations of a Texas business. We therefore address the "arise from or related to" requirement of specific jurisdiction together for these claims. *See Sutton*, 621 F.Supp.2d at 442; *see also Davis Invs., VI, LP*, 2009 WL 975961 at *12 n. 7.

Within his issue concerning specific jurisdiction, Touradji asserts three reasons the trial court erred in denying his special appearance. First, Touradji asserts that plaintiffs failed to sufficiently allege juris-

5. Plaintiffs assert that Touradji's concession that specific jurisdiction exists with respect to certain claims, discussed below, waives his special appearance with respect to all remaining claims. To support this assertion, plaintiffs cite to this Court's opinion in *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438 (Tex.App.-Houston [1st Dist.] 2005, no pet.). In *Glattly*, we stated that the trial court properly denied Glattly's special appearance if personal jurisdiction existed with respect to any claim asserted against him. *Glattly*, 177 S.W.3d at 447. We noted that Glattly had filed a special appearance "to the entire proceeding" rather than making a special appearance as to specific claims. *Id.; see also* Tex.R. Civ. P. 120a(1) ("A special appearance may be made as to an entire proceeding or as to any severable claim involved therein."). We also noted that Glattly's personal jurisdiction briefing in the trial court did not assert separate arguments for separate causes of action brought against him or assert that any cause of action asserted against him was severable. *Id. Glattly* is distinguishable. Here, Touradji filed a brief with the trial court specifically asserting that different causes of action must be examined separately for personal jurisdiction and citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir.2006). At the special appearance hearing, Touradji also specifically argued that specific jurisdiction must be established separately for each cause of action.

dictional facts to support each claim. Second, Touradji contends that under the supreme court's opinion in *Michiana*, Touradji has not purposefully availed himself of doing business in Texas. Third, Touradji asserts that, even if his contacts were sufficient to support a finding of minimum contacts, his contacts are not substantially connected to the operative facts of this litigation to support jurisdiction under *Moki Mac*.

### 1. Sufficiency of Allegations

Plaintiffs alleged five causes of action against Touradji: (a) interference with contracts and economic relations; (b) fraud; (c) slander and libel; (d) breach of fiduciary duty; and (e) intentional infliction of emotional distress.

### (a) Interference with Contract and Economic Relations

Concerning this cause of action, plaintiffs alleged Touradji and DeepRock communicated with plaintiffs in Texas. Plaintiffs also alleged Touradji executed a "consent" causing Playa GP, as general partner of Playa LP, to sell Texas properties to raise revenue. Plaintiffs further alleged Touradji caused distributions of this revenue to be made to DeepRock, but withheld any distribution to Beach Capital. Finally, plaintiffs alleged that Touradji has taken control of Playa GP and Playa LP and "failed to cooperate with and otherwise obstructed the operations of Playa LP." [6]

■ Unlike the allegations in *Kelly*, here plaintiffs pleaded that Touradji com-municated with them in Texas. Touradji, acting as a manager for a Texas limited liability company, allegedly caused a Texas limited partnership to sell Texas property to raise revenue. Touradji then allegedly caused the distribution of those revenues from the Texas entities to DeepRock, and withheld any distribution to the other limited partner, Beach Capital, another Texas entity. We hold these allegations are sufficient to plead a connection between the alleged wrongful acts and Texas. *See Pulmosan Safety Equip. Corp.*, 273 S.W.3d at 839 (holding we accept allegations as true in reviewing special appearance); *see also Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 340 (Tex.2009) (finding personal jurisdiction appropriate where defendant accepted transfer of Texas real property even though transaction occurred outside of Texas); *TexVa, Inc. v. Boone*, 300 S.W.3d 879, 889 (Tex.App.-Dallas 2009, pet. filed) (finding jurisdiction proper over nonresident defendants who formed partnership with Texas, later incorporated business under laws of Texas, served as officers and directors of that corporation, and allegedly breached fiduciary duties to Texas corporation and Texas shareholder).

### (b) Fraud

■ Concerning the allegations of fraud, Touradji asserts the "bare assertions of fraud …, without more, are neither material nor relevant in assessing contacts to determine personal jurisdiction over a nonresident defendant." *See Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 78

---

6. In his brief to this Court, Touradji states he is not appealing the trial court's denial of his special appearance concerning the claim for interference with contract and economic relations, but only to the extent "this cause of action arises from Touradji's actions *as a manager* of Playa GP." (Emphasis in original).

Unlike the claim for breach of fiduciary duty, discussed below, the allegations do not clearly limit this cause of action as arising from Touradji's role as a manager of Playa GP. We therefore address this claim on the merits of the jurisdictional issue.

(Tex.App.-Houston 2008, no pet.) In *Kelly*, the supreme court found an allegation of fraud insufficient to invoke personal jurisdiction over the defendant when it did not mention Texas at all. *Kelly*, 301 S.W.3d at 656, 660. The allegation in that case stated "the material representations made by [defendant] were false and were made with the intention that [plaintiff] would rely thereon." *Id.* at 655. In contrast, the allegations in this case are that Touradji made a representation to plaintiffs in Texas and that the representation concerned the ongoing operation of two Texas entities. These allegations specifically mention Texas, pleading a connection between Touradji's allegedly wrongful acts and Texas. *See id.* at 655, 660. We hold these allegations are sufficient.

### (c) Breach of Fiduciary Duty

In his brief to this court, Touradji specifically states that he "does not appeal the finding of specific jurisdiction over him with respect to the claims of breach of fiduciary duty, to the extent that such a duty arose by virtue of Touradji's position as a Manager of Playa GP." In their petition, the only allegation of fiduciary duties owed by Touradji made by plaintiffs is that "Touradji, as manager of Playa Oil & Gas GP, LLC, owes fiduciary duties to Plaintiff Playa Oil & Gas GP, LLC, and along with DeepRock, owes fiduciary duties to Playa Oil & Gas GP, LLC, Playa Oil & Gas LP, and Beach Capital Partnership, LP." Because Touradji concedes there is jurisdiction over the breach of fiduciary duty claim on the only basis alleged by the plaintiffs, we affirm the trial court's order denying Touradji's special appearance with respect to breach of fiduciary duty claim.

### (d) Slander and Libel

■ Concerning the slander and libel claims, Touradji asserts that plaintiffs' "generalized allegations" of slander and libel, without any pleading that the "supposed statements were made *in Texas* or even *to anyone* who was located in Texas," are insufficient. (Emphasis in original). In the facts section of their live pleading, plaintiffs alleged, "Paul Touradji has slandered and libeled Gary M. Beach by disseminating oral and written untrue and injurious statements, which were intended to be disseminated public[ly], including in Texas." In the causes of action section, plaintiffs alleged, "Paul Touradji has slandered and libeled Gary M. Beach by uttering and causing the publication of untruths concerning Mr. Beach, which statements were injurious to his reputation and standing." The only mention of Texas in these allegations is that the defamatory statements were intended to be made publicly "including in Texas." There is no allegation of any connection to Texas. There is no allegation that the statements were made or disseminated in Texas. These allegations closely resemble the allegations of fraud in *Kelly* that pleaded no Texas conduct and no connection to Texas. *See Kelly*, 301 S.W.3d at 656, 660. We hold these allegations are insufficient.

### (e) Intentional Infliction of Emotional Distress

■ Touradji asserts the same arguments concerning the allegations of intentional infliction of emotional distress as he does concerning the allegations of slander and libel. Plaintiffs alleged, "Paul Touradji has threatened and slandered the other managers of Playa Oil & Gas GP, LLC. . . ." Plaintiffs also pleaded, "Paul Touradji has, on several occasions, threatened the managers and personnel of Playa Oil & Gas GP, LLC, with economic and bodily harm, such conduct being so intentional, extreme, and outrageous as to be utterly intolerable in a civilized community, causing severe emotional distress, inju-

ry and damages to Plaintiffs." Like the allegations in *Kelly,* these allegations make no mention of Texas. These allegations contain no pleading of a connection between Touradji's alleged wrongdoing and Texas. *Kelly,* 301 S.W.3d at 660. We hold these allegations are insufficient.

For the remaining analysis, we do not address the claims of intentional infliction of emotional distress or slander and libel because we have concluded the plaintiffs did not meet their initial burden of sufficiently alleging Touradji came within the terms of the Texas long-arm statute for those claims. *See id.* at 659. Nor do we address the claim of breach of fiduciary duty because Touradji has not appealed the trial court's denial of his special appearance for that claim. For the remaining claims—interference with contract and economic relations and fraud—the burden is on Touradji to negate all bases of jurisdiction alleged by plaintiffs. *See id.; Moki Mac River Expeditions,* 221 S.W.3d at 574.

## 2. Purposeful Availment

Within this portion of his second issue, Touradji contends this case is governed by the Texas supreme court's opinion in *Michiana.* Touradji asserts we must look to "Texas-based conduct" and "where the defendant's actions were carried out." Although these are factors that could impact a personal jurisdiction analysis, the Supreme Court's holding in *Michiana* is not so narrow.

### (a) *Michiana Easy Livin' Country, Inc. v. Holten*

In *Michiana,* the Texas supreme court held that the exercise of personal jurisdiction was not proper over Michiana because its sole contact with Texas was not the result of actions it directed towards Texas. *Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 794. Michiana, an Indiana company, received a phone call from Holten, a Texas resident. *Id.* at 784. Holten arranged to buy an RV from Michiana and to have it shipped to Texas at his own expense. *Id.* During the course of this phone call, Michiana allegedly made misrepresentations to Holten. *Id.* The supreme court rejected cases that upheld personal jurisdiction based on whether the defendant "directed a tort" towards Texas in a single phone call. *Id.* at 790–91. "First, the court explained the focus must remain on the relationship among the defendant, the forum, and the litigation," but a "directing a tort" analysis shifts the focus to the relationship among the plaintiff, the forum, and the litigation. *Id.* at 790. Second, "directing a tort" analysis improperly focuses on the merits of the claim; the focus should be on the defendant's contacts with Texas, not whether those contacts were tortious. *Id.* at 790–91. Third, focusing on whether the defendant directed a tort toward Texas could alter the outcome of jurisdictional analysis based on whether the plaintiff alleged a tort or a contract claim based on the same actions. *Id.* at 791. The supreme court disapproved of intermediate court holdings that "(1) specific jurisdiction is necessarily established by allegations or evidence that a nonresident committed a tort in a telephone call from a Texas number, or that (2) specific jurisdiction turns on whether a defendant's contacts were tortious rather than the contacts themselves." *Id.* at 791–92 (footnotes omitted).

The supreme court did not hold that specific jurisdiction turns only on "Texas-based conduct" and "where the defendant's actions were carried out," as Touradji asserts. Texas supreme court decisions since *Michiana* make this clear. In *Moki Mac,* the supreme court found sufficient minimum contacts over Moki Mac, an Ari-

zona company. *Moki Mac River Expeditions,* 221 S.W.3d at 579. In that case the supreme court noted that a personal jurisdiction analysis must consider whether a nonresident defendant "purposefully directed action towards Texas." *Id.* at 577. Among other activities, Moki Mac regularly advertised in Texas and solicited business from Texas residents through mass and targeted direct-marketing email campaigns. *Id.* at 577–78. In finding sufficient minimum contacts, the supreme court stated, "Moki Mac's business with Texas residents stems from its marketing and advertising activities purposefully directed at gaining Texas customers, and it thus availed itself of doing business here." *Id.* at 579.

The supreme court also found personal jurisdiction over a California company in *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333 (Tex.2009). Retamco, a Texas company, sued Republic Drilling Company, a California corporation, over Republic receiving oil and gas wells and leases, allegedly in violation of the Uniform Fraudulent Transfer Act. *Retamco Operating, Inc.,* 278 S.W.3d at 336. Republic filed a special appearance, asserting that it did not have minimum contacts with Texas because the allegedly fraudulent transfer occurred entirely outside of Texas. *Id.* at 336–37. The supreme court stated that "[j]urisdiction ... may not be avoided merely because the defendant did not physically enter the forum state." *Id.* at 339 (quoting *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184). The supreme court noted that Republic knowingly and willingly entered into the transaction to accept real property in Texas, and that this was sufficient to constitute purposeful availment of doing business in Texas. *Id.* at 339–40. Thus, our focus is on Touradji's actions that were purposefully directed towards Texas, not solely on whether he physically performed those actions in Tex-

as. *See Retamco,* 278 S.W.3d at 339; *Moki Mac River Expeditions,* 221 S.W.3d at 579.

### (b) Touradji's Contacts

Here, Touradji formed DeepRock for the sole purpose of becoming a limited partner in Playa LP, a Texas entity. The partnership agreement recites the principal place of business of Playa LP is Houston, Texas. The agreement also provides, "*Applicable Law.* This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted, construed and enforced in accordance with the laws of the State of Texas without regard to any choice of law principles." (Emphasis in original). Although he signed the partnership agreement on behalf of DeepRock, the agreement shows Touradji knew he was becoming involved with a Texas entity, doing business in Texas and subject to the laws of Texas.

Touradji, in his individual capacity, also agreed to serve as a manager of Playa GP, another Texas entity. Playa GP's sole purpose was to act as the general partner of Playa LP and carry out its business, which included oil and gas interests in Texas. Additionally, the articles of organization of Playa GP specifically invoke the provisions of the Texas Business Corporations Act concerning indemnification of the managers.

Touradji communicated with Beach, a Texas resident, and with Beach Capital, another Texas entity, concerning the ongoing business of Playa LP and Playa GP. Touradji consented to Playa LP's sale of Texas oil and gas interests to raise revenue, which was distributed to DeepRock and not to the other limited partner, Beach Capital. Touradji also met with other managers of Playa GP to remove Beach as a manager and CEO of Playa GP.

### (c) Analysis

 Touradji purposefully directed his activities towards Texas. First, the actions stated above are Touradji's actions, not the unilateral actions of some third party. *See Retamco,* 278 S.W.3d at 340 (finding nonresident defendant's contact with Texas not result of unilateral activity of third party when defendant was "willing participant in a transaction with an affiliated Texas company to purchase Texas property"); *TexVa, Inc.,* 300 S.W.3d at 889 (nonresident defendants' Texas contacts not unilateral activity of third party where they formed partnership with Texas resident, later incorporated partnership under Texas law, agreed to serve as officers and directors of corporation, and traveled to Texas twice to discuss business). Second, Touradji's contacts cannot be characterized as random, isolated, or fortuitous. *See Retamco,* 278 S.W.3d at 340 (finding nonresident defendant's contact with Texas not "random, fortuitous, or attenuated" because defendant "reached out and created a continuing relationship in Texas" by knowingly accepting transfer of real property located in Texas); *TexVa, Inc.,* 300 S.W.3d at 889 (finding nonresident defendants' Texas contacts purposeful and not "random, isolated, or fortuitous" where defendants agreed to create ongoing business relationship with Texas residents, form Texas corporation, act as officers and directors of Texas corporation, and twice traveled to Texas to discuss ongoing business of corporation). Third, Touradji sought benefits, advantages, and profits through his purposeful availment of Texas. *See Retamco,* 278 S.W.3d at 340 (finding nonresident defendant sought "benefit, advantage or profit" in Texas by accepting real property located in Texas because defendant could enforce warranties and covenants related to real property, received revenue from property, and sold portion of property); *TexVa, Inc.,* 300 S.W.3d at 889 (finding nonresident defendants' acts in creating Texas corporation and ongoing business relationship with Texas residents "clearly sought to profit" from contact with Texas). We hold Touradji's contacts were purposefully directed towards Texas.

We also note Touradji bears the burden of negating all bases of jurisdiction alleged by the plaintiffs. *See Kelly,* 301 S.W.3d at 659. Here, in his affidavit, Touradji admitted that he had approximately 10 phone calls to and from Texas discussing the ongoing business of Playa LP. Touradji also visited Texas five times for Playa LP business. Concerning the specific allegations of fraud (that Touradji made representations to plaintiffs in Texas) and interference with contract (that Touradji took control of Playa LP, obstructed its ongoing operations, and denied plaintiffs their share of revenues), Touradji avers, "To the extent that any of the aforementioned allegations occurred—and I deny any and all allegations of wrongdoing—Plaintiffs have not, and cannot, allege that any of the allegations with respect to me occurred in Texas." As discussed above, physical presence in Texas is not the only basis for personal jurisdiction and plaintiffs' allegations of fraud and interference with contract did sufficiently allege a Texas connection.

### 3. Substantial Connection

 In this portion of his second issue, Touradji asserts that his contacts with Texas are not substantially connected to the operative facts of the litigation. In order to meet the final requirement for specific jurisdiction—that the claims arise from or relate to the defendant's contacts with Texas—there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac,* 221 S.W.3d at 584–85.

■ Touradji's contacts with Texas all relate to the ongoing business of Playa GP and Playa LP. As discussed above, these contacts include communicating to Texas residents concerning the ongoing operations of Texas entities, consenting to the sale of Texas real property, causing distributions to be made from a Texas entity, removing Beach as a manager and officer of a Texas entity, and taking control of two Texas entities. The underlying litigation concerns whether, during the course of these activities, Touradji made fraudulent representations to Texas residents, breached fiduciary duties that he owed to Texas residents, or interfered with the business relationships and contracts of Texas residents. This is a sufficient basis to conclude the claims in this case are substantially related to Touradji's purposeful contacts with Texas. *See TexVa, Inc.,* 300 S.W.3d at 890 (holding "no difficulty concluding" litigation concerning breach of business agreements and breach of fiduciary duty arose from or was related to defendants' contacts that constituted ongoing business relationship with Texas). In addition, part of the alleged wrongdoing involves the sale of Texas real property and the disbursement of the proceeds from that sale to DeepRock from the Texas entities. *See Retamco,* 278 S.W.3d at 341 (suit concerning allegedly fraudulent transfer of Texas real property from Texas entity arises from or relates to Texas contacts even though transaction occurred outside of Texas). We hold the underlying litigation arises from or relates to Touradji's contacts with Texas.

Touradji relies upon two recent court of appeals cases to support his contention that he is not subject to specific jurisdiction. First, Touradji cites to *Lamar v. Poncon,* 305 S.W.3d 130 (Tex.App.-Houston [1st Dist.] 2009, pet. filed). In *Lamar,* the Lamars booked a vacation in Nicaragua. 305 S.W.3d at 133–34. While driving the Lamars from the airport to the resort, the driver fell asleep, severely injuring the Lamars in the ensuing accident. *Id.* The nonresident defendant allegedly made representations to the Lamars that their travel from the airport to the resort would be safe. *Id.* at 138–39. This court held specific jurisdiction was not present because there was no substantial connection between the representation and the operative facts of the litigation because the litigation would focus on whether the nonresident defendant and its driver were negligent in Nicaragua. *Id.* Unlike *Lamar,* the operative facts of this litigation revolve around the ongoing business operations of a Texas entity with its principal place of business in Texas. Touradji's contacts relate directly to the facts of the litigation, and the focus of the litigation will not be on an accident or injury that occurred outside of Texas. *Lamar* is distinguishable and therefore not controlling in this case.

Touradji also cites to *Proctor v. Buell,* 293 S.W.3d 924 (Tex.App.-Dallas 2009, no pet.). In *Proctor,* the plaintiffs, Texas residents, alleged the defendants, including Proctor, fraudulently induced plaintiffs to invest $120,000 to acquire Texas property, of which plaintiffs would receive partial ownership. *Proctor,* 293 S.W.3d at 926. Proctor filed a special appearance that the trial court denied. *Id.* at 927. The court of appeals held the trial court erred because Proctor was not subject to specific jurisdiction in Texas. *Id.* at 932. Although Proctor contributed money to acquire the Texas property and profited from the allegedly wrongful sale of the property, the operative facts of the litigation would focus primarily on the alleged misrepresentations made to plaintiffs and the undisputed evidence showed that Proctor never communicated with plaintiffs in any way. *Id.* The court therefore held there was not a substantial connection be-

tween Proctor's contacts and the operative facts of the litigation. *Id.* Here, plaintiffs have alleged that Touradji communicated with them concerning the operations of a Texas entity. This lawsuit involves those allegedly fraudulent communications. Further, it is undisputed that Touradji communicated with plaintiffs, both over the phone and while physically present in Texas. *Proctor* is distinguishable on the facts of the case.

We sustain Touradji's second issue concerning the claims for slander and libel and for intentional infliction of emotional distress. We overrule Touradji's second issue concerning the claims for fraud, breach of fiduciary duty, and interference with contract and economic relations.

### Conclusion

We reverse the trial court's denial of Touradji's special appearance concerning the claims for slander and libel and for intentional infliction of emotional distress. We also reverse the trial court's denial of Touradji's special appearance concerning general jurisdiction. We affirm the trial court's order in all other respects. We remand this case to the trial court for further proceedings.