**Opinion issued November 5, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00465-CV

———————————

**DARRELL JULIAN AND TED HENNIS, Appellants**

**V.**

**CADENCE MCSHANE CONSTRUCTION COMPANY, LLC AND PINPOINT COMMERCIAL LP, GENERAL PARTNER OF PPC GP, LLC, Appellees**

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-13825**

---

## MEMORANDUM OPINION

After a lawsuit was filed against them, Cadence Mcshane Construction Company, LLC and Pinpoint Commercial LP filed third-party petitions against Darrell Julian and Ted Hennis. Julian and Hennis filed special appearances,

challenging the trial court's personal jurisdiction over them. The trial court denied the special appearances, and Julian and Hennis appealed. In five issues, Julian and Hennis argue (1) res judicata prevented the trial court from exercising personal jurisdiction over them; (2) collateral estoppel prevented the trial court from exercising personal jurisdiction over them; (3) Cadence failed to allege facts in their petition establishing the trial court's jurisdiction over them; and (4) Cadence failed to present sufficient facts to establish the trial court's jurisdiction over them.

We reverse and render.

## Background

Cadence entered into a contract with Pinpoint Commercial to build an assisted living facility for Pinpoint Commercial in Katy, Texas. Cadence was the general contractor on the project. Cadence subcontracted with Darrell Julian Construction, Inc. ("DJC") to install steel for the project. There is no indication in the record of which party initiated contact for the contract. In the course of its work on the project, DJC submitted an invoice to Cadence for CP Supply Company ("CPSC") as the supplier of steel on the project.

Pursuant to a joint checking agreement with DJC, Cadence paid CPSC's invoice in two payments. The agreement was signed by representatives for Cadence, DJC (signed by Julian), and CPSC (signed by Hennis). The agreement provided that payments would be made to both DJC (as the subcontractor) and

2

CPSC (as the supplier) and that DJC and CPSC would determine between themselves how the money would be divided between them. The agreement provided, "The sole purpose of this joint check agreement is to provide the payment of invoices to Supplier on sales and/or rentals of all materials/equipment to Subcontractor on the . . . project." After both payments, Hennis, as the representative for CPSC, signed a notarized document acknowledging that CPSC had been paid the amounts indicated "for all labor, services, equipment, or materials furnished to the property or to [DJC] on the property of" the project. Hennis notarized the documents in New Mexico.

On March 14, 2014, Veteran Steel, LLC filed suit against Cadence, Pinpoint Commercial, and DJC. In its petition, Veteran Steel alleged that it had contracted with DJC to supply certain materials for Pinpoint Commercial's project, that it supplied the required materials, and that it had never been paid for the materials it supplied. Cadence and Pinpoint answered the suit; asserted cross-claims against DJC; and asserted third-party claims against CPSC, Julian, Hennis, and another individual. Cadence and Pinpoint's claims against Julian and Hennis were for quantum meruit, trust fund claim violation, fraud, negligent misrepresentation, and conspiracy. Cadence and Pinpoint also asserted a claim of fraudulent record against Hennis.

Before answering, Julian and Hennis filed special appearances, challenging the trial court's personal jurisdiction over them in their individual capacities. Julian and Hennis are residents of New Mexico. DJC and CPSC are New Mexico based companies. Julian is president and sole owner of DJC. Hennis is an employee of DJC and Vice President of Operations for CPSC. Julian and Hennis asserted that they did not take any action on the project in their individual capacities but, instead, in their capacities as agents for their respective companies.

In his affidavits in support of his special appearance, Julian averred that his only personal contacts with Texas were to attend football games or take vacations. He also averred that he had not maintained any bank accounts in Texas, performed any record keeping in Texas related to the project in question, attended any meetings at the project site with the exception of one trip in December 2013, authored or signed any documents or communications with any of the parties while he was present in Texas, or made any representations about payments to DJC or CPSC while he was present in Texas.

In his affidavits in support of his special appearance, Hennis averred that his only contacts with Texas were personal visits with his parents in Amarillo, Texas. He also averred that he had not maintained any bank accounts in Texas, performed any record keeping in Texas related to the project in question, attended any bid meetings or construction meetings at the project site, authored or signed any

4

documents or communications with any of the parties while he was present in Texas, or made any representations about payments to DJC or CPSC while he was present in Texas or anywhere else.

In their response to the special appearances, Cadence and Pinpoint Commercial attached a number of documents to support the trial court's personal jurisdiction over Julian and Hennis. This included an affidavit of Robert Bedrich, vice president and division manager of Cadence. Bedrich asserted a number of actions taken by Julian that subjected him to jurisdiction in Texas. Specifically, Bedrich alleged that Julian had taken the following actions:

a. Sending false invoices to ship materials to Katy, Texas;

b. Creating a Joint Checking Agreement to send to Cadence McShane signed by both Mr. Julian and Mr. Hennis;

c. Engaging in multiple telephone meetings with Cadence McShane Personnel;

d. Attending multiple meetings in person with Cadence McShane in Texas;

e. Making multiple misrepresentations to Cadence in Texas that Cadence McShane reasonably relied upon to its detriment;

f. Executing notarized releases containing fake information that Cadence McShane received in Texas and then reasonably relied upon to its detriment;

g. Facilitating the transfer of materials from [CPSC] to Cadence McShane, which Mr. Julian was also the Principal of; [and]

h. Flying Mr. Julian to Houston to address the issue with suppliers on the Project.

Bedrich made similar assertions about actions taken by Hennis that subjected him to jurisdiction in Texas. Specifically, Bedrich alleged that Hennis had taken the following actions:

a. Creating a Joint Checking Agreement to send to Cadence McShane signed by both Mr. Julian and Mr. Hennis;

b. Making multiple misrepresentations to Cadence in Texas that Cadence McShane reasonably relied upon to its detriment;

c. Receiving payments from Cadence McShane's bank in Texas; and

d. Executing notarized releases containing fake information that Cadence McShane received in Texas and then reasonably relied upon to its detriment.

Cadence and Pinpoint's other evidence attached to the response consisted of the CPSC invoice, the joint checking agreement, Hennis's notarized documents acknowledging receipt of the documents, Cadence's corresponding checks to DJC and CPSC, and an email from a DJC employee claiming that Julian had committed fraud on Cadence and Pinpoint and that CPSC was a shell company that had not supplied anything on the project.

The trial court denied Julian's and Hennis's special appearances. No party requested findings of facts and conclusions of law.

### Special Appearance

In their fourth issue, Julian and Hennis argue that Cadence and Pinpoint failed to plead sufficient facts in their petition to bring Julian and Hennis within

6

Texas's long-arm statute. In their fifth issue, Julian and Hennis argue Cadence and Pinpoint failed to present sufficient evidence to establish that the trial court has personal jurisdiction over them.

## A. Standard of Review

"Whether a court can exercise personal jurisdiction over nonresident defendants is a question of law, and thus we review de novo the trial court's determination of a special appearance." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). When a trial court does not issue findings of fact or conclusions of law, "we presume that all factual disputes were resolved in favor of the trial court's ruling." *Aduli v. Aduli*, 368 S.W.3d 805, 813 (Tex. App.— Houston [14th Dist.] 2012, no pet.). "When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court."[1] *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

---

[1] Our record contains a clerk's record but no reporter's record. There is no indication, however, that any evidence was admitted at the hearing on the special appearances. Likewise, the order reflects that "arguments" occurred at the hearing but that the court only reviewed "the pleadings [and] the foregoing motions and responses" in making its ruling. Any conflicting evidence, then, exists only in the clerk's record. Accordingly, we determine the clerk's record alone is sufficient to perform legal and factual sufficiency reviews in this case. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (Tex. 2005) (holding "reporter's record is required only if evidence is introduced in open court; for non-evidentiary hearings, it is superfluous").

**B.     Applicable Law**

"A nonresident defendant is subject to the personal jurisdiction of Texas courts if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate federal and state constitutional due process guarantees." *Kelly*, 301 S.W.3d at 657.  Texas's long-arm statute extends a trial court's jurisdiction to the scope permitted by the federal constitution's due-process requirements. *Id.*  Under due-process requirements, a state can exercise personal jurisdiction over a nonresident "when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).

A party establishes minimum contacts with the forum state if it purposefully avails itself of the privileges and benefits of conducting business in a state. *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 24 (Tex. App.—Houston [1st Dist.] 2010, no pet.).  The scope of the nonresident's actions that can constitute purposeful availment varies depending on the type of jurisdiction alleged: general jurisdiction and specific jurisdiction.  Here, only specific jurisdiction is at issue.  Accordingly, we only consider the law as it applies to specific jurisdiction.

8

A court has specific personal jurisdiction over a nonresident if (1) the nonresident purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there and (2) the controversy arises out of or is related to the non-resident's contacts with the forum state. *Id.* Such a determination ultimately concerns the relationship among the nonresident, the forum, and the litigation. *Kelly*, 301 S.W.3d at 658. Certain considerations are relevant in this determination. First, only the nonresident's actions are relevant to the determination of purposeful availment; unilateral actions of the plaintiff or of a third party are not relevant. *Touradji*, 316 S.W.3d at 24. Also, the actions of the nonresident must be purposeful; random, isolated, or fortuitous actions are insufficient. *Id.* Likewise, the nonresident's actions must seek some benefit, advantage, or profit through the purposeful availment so that the nonresident can be deemed to consent to suit there. *Id.*

In contrast, proof that the nonresident "directed a tort" at a jurisdiction is insufficient. *Kelly*, 301 S.W.3d at 661 (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788–92 (Tex. 2005)). Claiming that a tort was "directed at" a jurisdiction improperly shifts the focus from the defendant's relationship to the forum and the litigation to the plaintiff's relationship to the forum and the litigation. *Michiana*, 168 S.W.3d at 790.

We also exclude from our consideration whether the nonresident did, in fact, commit a tort in Texas. *Id.* at 791. Otherwise, our jurisdictional rule would be "guilty nonresidents can be sued here, innocent ones cannot." *Id.* Instead, it is the alleged actions (as it pertains the allegations in the pleadings) and the proven actions (as it pertains to the evidence presented) of the nonresident that matter, regardless of whether those actions are tortious. *See id.*

Special appearances are subject to shifting burdens. *Kelly*, 301 S.W.3d at 658. "[T]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Id.* In the special appearance, the defendant bears the burden of negating "all bases of personal jurisdiction alleged by the plaintiff." *Id.* This review is necessarily tied to the allegations in the plaintiff's pleadings. *Id.* "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleadings." *Id.* If the plaintiff failed to plead sufficient facts to show the defendant is subject to the personal jurisdiction of the court, the defendant need only prove that it does not live in Texas. *Id.* at 658–59. Otherwise, the defendant bears the burden of either disproving any contacts in Texas or showing that the contacts fall short of purposeful availment. *Id.* at 659.

**C.      Analysis**

Cadence and Pinpoint asserted five causes of action against Julian and Hennis: quantum meruit, trust fund claim violation, fraud, negligent misrepresentation, and conspiracy. Cadence and Pinpoint also asserted a claim of fraudulent record against Hennis. Personal jurisdiction is determined by the nonresident's relationship to the litigation. *Id.* at 658. As a result, personal jurisdiction is claim specific, meaning the trial court could have personal jurisdiction over a party for some claims but not for others. *See id.* at 660; *Touradji*, 316 S.W.3d at 25–26. If separate claims are based on the same forum contacts, however, we can review the claims together. *Touradji*, 316 S.W.3d at 26. For purposes of this appeal, we review the claims separately.

**1.      Quantum Meruit**

For the quantum meruit claim, it is relevant that the parties acknowledge that contracts existed between Cadence, Pinpoint, DJC, and CPSC that concerned the actions taken by the parties. Cadence and Pinpoint asserted a breach of contract claim against DJC and CPSC for breach of these contracts. The quantum meruit claim, which also include Julian and Hennis, is presented in the alternative to the breach of contract claim.

"Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished." *Vortt Exploration*

11

*Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). A party can nevertheless prevail by showing the contract "is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons." *Lee v. Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Cadence and Pinpoint provided no allegations for why the contract should not be enforced. There is no explanation, then, of any actions taken by Julian and Hennis in their individual capacity (that is, the capacity in which they were sued) that would form the basis for this quantum meruit claim and that would subject them to the personal jurisdiction of the court. *See Kelly*, 301 S.W.3d at 658 (holding determination of specific personal jurisdiction concerns relationship among nonresident, forum, and litigation and defendant's burden to negate jurisdiction is tied to allegations in plaintiff's pleadings); *Touradji*, 316 S.W.3d at 25–26 (holding specific jurisdiction is reviewed based on each individual claim).

Julian and Hennis presented proof that they did not reside in Texas. Accordingly, they presented sufficient evidence, on the basis of insufficient pleading of jurisdictional facts, to rebut the assertion of personal jurisdiction over them for Cadence and Pinpoint's quantum meruit claim. *See Kelly*, 301 S.W.3d at 658–59. We sustain Julian and Hennis's fourth issue as it applies to the quantum meruit claim.

## 2. Negligent Misrepresentation

In this claim, Cadence and Pinpoint argue that Julian and Hennis made negligent misrepresentations "for the purpose of inducing Cadence into entering a contract with DJC." By the allegations, then, the actions related to this claim predate Cadence's contract with DJC. Nothing in the petition and nothing in the evidence related to the special appearances, however, offer any allegation or proof of any action taken by Julian or Hennis before Cadence and DJC entered into a contract. Accordingly, there is nothing to establish the trial court's personal jurisdiction over them for this claim. We sustain Julian and Hennis's fourth and fifth issues as they apply to the negligent misrepresentation claim.

## 3. Trust Fund Claim

Chapter 162 of the Texas Property Code makes certain payments for a construction project "trust funds." *See* TEX. PROP. CODE ANN. § 162.001(a) (Vernon 2014). We have held that this chapter can subject a corporate officer to personal liability and personal jurisdiction of a Texas court. *See Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 870 (Tex. App.—Houston [1st Dist.] 1995, no writ). Cadence and Pinpoint alleged in their petition that Julian and Hennis, as corporate officers of DJC, received funds meant to pay for the project and were, pursuant to Chapter 162, trustees of those funds. Caden and Pinpoint further alleged that Julian and Hennis breached their fiduciary duties by

misapplying the money and giving it to a party that had not performed any work or delivered any supplies for the project.

*Kelly* also concerned the personal jurisdiction over a nonresident corporate officer for a trust fund claim. 301 S.W.3d at 656–57. In that case, Kelly and Hofstatter were Arizona residents and officers of Diva Consulting, an Arizona-based company. *Id.* at 655. Diva was hired by Merristar as a general contractor to renovate a Houston hotel. *Id.* Diva subcontracted work to other companies. *Id.* During this time, Kelly made numerous trips to Texas to oversee the work. *Id.* A dispute arose between Diva and GIC, a subcontractor. *Id.* at 655–56. Merristar filed suit against Diva and GIC, among others. *Id.* at 656.

GIC sued Diva, Kelly and Hofstatter, asserting claims under Chapter 162 and fraud. *Id.* GIC made no mention of Texas in its pleadings other than to incorporate by reference the contract between the owner and Diva, which identified Houston, Texas as the job site. *Id.* Kelly and Hofstatter filed special appearances, asserting they were not residents of Texas. *Id.* GIC did not file any responsive evidence showing actions taken by Kelly and Hofstatter in Texas. *Id.* at 660. The trial court denied the special appearances. *Id.* at 656.

The Supreme Court of Texas held that the pleadings were insufficient to establish personal jurisdiction over Kelly and Hoffstatter. *Id.* at 660. Regarding the Chapter 162 claims, "GIC did not allege that [Kelly and Hoffstater] used or

14

retained the trust funds *in Texas*, nor that they submitted false affidavits to Merristar *in Texas*." *Id.* (emphasis added). As a result, the court held, Kelly and Hofstatter carried their burden by establishing that they did not live in Texas. *Id.*

The court further rejected the claim that jurisdiction was established by the allegation that Kelly and Hofstatter "controlled and directed funds received under Diva's contract with Merristar. But the mere existence of a cause of action does not automatically satisfy jurisdictional due process concerns." *Id.* Instead, GIC was required to "plead and, when challenged by the defendants, present evidence that the Officer's relevant acts (i.e., those connected to GIC's claims) occurred, at least in part, in Texas." *Id.* at 660–601.

Finally, the court rejected the argument that the alleged conduct "sufficiently 'relates to' conduct purposefully directed toward Texas. But we rejected the concept of directed-a-tort jurisdiction in *Michiana*." *Id.* at 661 (citing *Michiana*, 168 S.W.3d at 788–92) (internal quotations omitted).

Here, Cadence and Pinpoint's pleading suffer from the same defect that was identified in *Kelly*. While their section identifying the parties alleged that Julian and Hennis could be served through the secretary of state because they "engage[d] in business in Texas but [did] not maintain a residence . . . or a designated registered agent for process," the jurisdictional facts do not bear out this assertion. Other than alleging that the construction project occurred in Texas, Cadence and

15

Pinpoint do not identify that any of the operative facts relating to their causes of action took place in Texas.

In contrast to *Kelly*, Cadence and Pinpoint did offer evidence in their response to the special appearances that they argue establishes personal jurisdiction. We hold this evidence does not meet the requirements for showing personal jurisdiction.

Included with their response to the special exceptions, Cadence and Pinpoint offered the affidavit of Bedrich, vice president and division manager of Cadence. For almost all of the allegations asserted by Bedrich, there is no explanation of where the actions taken by Julian or Hennis occurred. At most, Bedrich asserts that these actions were directed at *them* in Texas. But proof that the action was directed at Texas is insufficient. *See id.*; *Michiana*, 168 S.W.3d at 790.

For actions occurring in Texas, Bedrich asserts that Julian "[a]ttend[ed] multiple meetings in person with Cadence McShane in Texas." But Bedrich offers no explanation of what was said or done at those meetings or how anything said or done at those meetings relate to any of their claims against Julian. It is undisputed that Julian engaged with Cadence and Pinpoint on the project as an agent for DJC. While they could assert claims against Julian for tortious acts he committed even while acting as agent for DJC, *see Ennis v. Loiseau*, 164 S.W.3d 698, 707 (Tex. App.—Austin 2005, no pet.) (recognizing well-established principle that corporate

officer is primarily liable for his own torts), Cadence and Pinpoint had to sufficiently establish jurisdictional facts to support those tortious claims, not for actions taken by Julian in Texas in general. *See Touradji*, 316 S.W.3d at 25–26 (holding personal jurisdiction is claim-specific).

Bedrich also asserted that, after the dispute with the suppliers came to light, Julian flew to Houston to address the issue. Bedrich does not identify any actions or statements by Julian during this meeting that support any of Cadence and Pinpoint's claims. Furthermore, Cadence and Pinpoint's own evidence shows that, by the time Julian flew to Houston to discuss this matter, Cadence and Pinpoint already knew of the dispute and already had received confirmation from a DJC employee that the tortious acts had been committed. Cadence and Pinpoint provide no explanation for how actions taken by an alleged tortfeasor after the alleged tort has occurred can supply a court with personal jurisdiction for the claim.

Cadence and Pinpoint's remaining evidence does nothing more to establish any action taken by Julian or Hennis in Texas. To the contrary, to the degree that the evidence provides any indication of Julian and Hennis's actions, it shows the actions occurred in New Mexico. This includes sending invoices and notarized documents from New Mexico. Simply showing that Julian and Hennis, while in New Mexico, spoke to Texas residents or sent invoices to Texas residents in the context of an already-existing business deal to which Julian and Hennis were not

personally parties does not suffice to establish personal jurisdiction. *See Michiana*, 168 S.W.3d 791–92 (disapproving cases holding personal jurisdiction is established by claiming defendant directed tort at Texas through phone call from Texas number); *Bryan v. Gordon*, 384 S.W.3d 908, 916 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (extending *Michiana* to multiple phone calls; holding proof that document emailed to party in Texas is insufficient).

Cadence and Pinpoint argue that this case is similar to *Wright*, in which this Court found personal jurisdiction. *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). In *Wright*, we held that "this and other appellate courts have held that a misrepresentation made by a nonresident defendant directed toward Texas is sufficient to assert specific jurisdiction." *Id.* at 251. But this is precisely the ruling that the Texas Supreme Court rejected in *Michiana*. In fact, the case we relied on for this assertion was the intermediate appellate court opinion that *Michiana* expressly overruled. *See id.* (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 127 S.W.3d 89, 98–99 (Tex. App.—Houston [1st Dist.] 2003), *rev'd*, 168 S.W.3d 777, 788–92 (Tex. 2005)).[2]

---

[2]      At oral argument, Cadence and Pinpoint's counsel cited to another case, claiming this case also supported their argument. *See Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 449 (Tex. App.—Houston [1st Dist.] 2005, no pet.). *Glattly* relies on *Wright* to assert that directing a tort at Texas is sufficient for personal jurisdiction. *Id.* Accordingly, it is no greater support than *Wright*.

We sustain Julian and Hennis's fourth and fifth issues as they apply to the trust fund claim.

### 4. Fraud & Fraudulent Record

Cadence and Pinpoint's claims for fraud and fraudulent record focus on the same facts as their trust fund claim. *Kelly* also concerned a trust fund claim and a fraud claim. *See Kelly*, 301 S.W.3d at 660–61. Both were factually related, and the court rejected both on similar grounds. *See id.* Cadence and Pinpoint's proof for their trust fund, fraud, and fraudulent record claims all suffer from the same insufficient pleading and insufficient proof of jurisdictional contacts that we have address for the trust fund claim. Accordingly, we hold the evidence is insufficient to establish that the court has personal jurisdiction over Julian and Hennis for the fraud and fraudulent record claims. We sustain Julian and Hennis's fourth and fifth issues as they apply to these claims.

### 5. Conspiracy

For this claim, Cadence and Pinpoint alleged a conspiracy among the various defendants to commit the claims we have reviewed. Personal jurisdiction is established by considering the acts of the individual defendant, not the acts of other defendants. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S. Ct. 2174, 2183 (1985). Alleging conspiracy does avoid this rule. *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (criticizing conspiracy as

independent basis for jurisdiction).  Because we have not found personal jurisdiction over Julian and Hennis for the other claims and because Cadence and Pinpoint have not alleged any further jurisdictional facts for this claim, we hold there is no proof of personal jurisdiction over Julian and Hennis for this claim.  We sustain Julian and Hennis's fourth and fifth issues as they apply to the conspiracy claim.[3]

## Conclusion

We reverse the trial court's denial of Julian's and Hennis's special appearances.  We render a judgment dismissing without prejudice the claims filed against them.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Brown.

---

[3] Because review of Julian and Hennis's remaining issues would not provide them with greater relief, we do not reach them.  *See* TEX. R. APP. P. 47.1.