**Affirmed and Opinion filed April 12, 2022.**



In The

# 𝕱𝐨𝐮𝐫𝐭𝐞𝐞𝐧𝐭𝐡 𝕮𝐨𝐮𝐫𝐭 𝐨𝐟 𝕬𝐩𝐩𝐞𝐚𝐥𝐬

## NO. 14-19-00854-CV

**FACEBOOK, INC., Appellant**

**V.**

**JANE DOE, Appellee**

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-69816**

## OPINION

In this interlocutory appeal, appellant Facebook, Inc., ("Facebook") challenges the denial of its special appearance in appellee Jane Doe's ("Doe") lawsuit alleging that in 2012, after her abuser connected with her through Facebook, she became a victim of sex trafficking. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(7). In four issues that we address as two, Facebook argues the trial court erred when it denied Facebook's special appearance because (1) Texas does not have general jurisdiction over Facebook, and (2) Texas does not have

specific jurisdiction over Facebook as to Doe's claim. Because we conclude that Doe established specific jurisdiction over Facebook in Texas, we affirm the trial court's denial of Facebook's special appearance.

## I. BACKGROUND

Facebook is a social media company incorporated in Delaware with its principal place of business in California. Facebook has also been registered to do business in Texas as an online social-networking business since 2009.

On October 1, 2018, Doe filed a lawsuit against Facebook alleging negligence, gross negligence, and violations of Texas Civil Practice and Remedies Code § 98.002.[1] *See id.* § 98.002(a).[2] Facebook filed a special appearance challenging the trial court's personal jurisdiction and a Rule 91a motion seeking dismissal of all of Doe's claims. *See* Tex. R. Civ. P. 91a.1 ("Except in a case brought under the Family Code or a case governed by Chapter 14 of the Texas Civil Practice and Remedies Code, a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact."). Doe amended her petition, adding claims for negligent undertaking and products liability, and filed responses to Facebook's special appearance and motion to dismiss.

The trial court denied Facebook's motion to dismiss on May 23, 2019, and denied Facebook's special appearance on October 7, 2019. On October 25, 2019, Facebook filed a notice of appeal seeking review of the denial of its special

[1] Doe's lawsuit also included claims against the following defendants: Backpage.com, LLC d/b/a Backpage; Carl Ferrer; Michael Lacey; James Larkin; John Brunst; America's Inns, Inc. d/b/a America's Inn 8201 Southwest Fwy, Houston, Tx 77074; and Texas Pearl, Inc.

[2] Section 98.002(a) of the Civil Practice and Remedies Code provides: "A defendant who engages in the trafficking of persons or who intentionally or knowingly benefits from participating in a venture that traffics another person is liable to the person trafficked, as provided by this chapter, for damages arising from the trafficking of that person by the defendant or venture." Tex. Civ. Prac. & Rem. Code Ann. § 98.002(a).

appearance. That same day, Facebook filed a petition for writ of mandamus in this court, seeking to compel the district judge to set aside the order denying Facebook's Rule 91a motion to dismiss.

This court denied Facebook's mandamus petition. *See In re Facebook, Inc.*, 607 S.W.3d 839, 839 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding) (per curiam). Facebook then filed petitions for writs of mandamus with the Supreme Court of Texas involving the underlying case and two other cases, one in the 334th District Court and another in the 151st District Court. Our court abated this special appearance appeal pending resolution of the supreme court proceedings. The supreme court granted Facebook's petitions in part and denied in part, directing the district court judges to dismiss Doe's claims for negligence, gross negligence, negligent undertaking, and products liability, but allowing her statutory human-trafficking claim to proceed. *See In re Facebook, Inc.*, 625 S.W.3d 80, 83, 98 (Tex. 2021) (orig. proceeding).[3] We subsequently reinstated Facebook's appeal from the denial of its special appearance and are left to determine whether Texas has personal jurisdiction over Facebook regarding Doe's statutory human-trafficking claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 98.002(a).

---

[3] The Supreme Court of Texas directed the respondent district court judges to dismiss Doe's claims for negligence, gross negligence, negligent undertaking, and products liability pursuant to § 230 of the Federal Communications Act because Doe "accused [Facebook] only of 'providing *neutral* tools to carry out what may be unlawful or illicit' communication by its users." *In re Facebook*, 625 S.W.3d 80, 98 (Tex. 2021) (orig. proceeding) (emphasis in original) (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008) (en banc) (op. on reh'g)); *see* 47 U.S.C. § 230. The Supreme Court of Texas did not direct the respondent district court judges to dismiss Doe's statutory sex trafficking claim because this claim "is predicated on allegations of Facebook's affirmative acts encouraging trafficking on its platforms." *In re Facebook*, 625 S.W.3d at 98.

## A. DOE'S LIVE PLEADING

In her live pleading, Doe alleges that Facebook "has long viewed its company mission to connect people in order to create profit." Facebook "uses the detailed information it collects and buys on its users to direct users to persons they likely want to meet," thereby facilitating human trafficking by identifying potential targets like Doe and connecting traffickers with those individuals. Facebook also "uses algorithms to categorize users into micro-targetable groups" to enable marketers to reach people based on a variety of factors.

Doe alleges, in conjunction with other allegations, that: Facebook is a social-networking business that provides social-networking services; Facebook targets customers and businesses in Texas; Facebook has millions of users in Texas on its platform; Facebook's social-media website allows users to create personalized webpages that contain information about themselves, including identifying information, photographs, videos, interests, recent activities, and links to content from other websites; Facebook collects data on its users' activities through the website, including but not limited to information regarding contact and group associations, content that users post and interact with, and use of third party websites; Facebook accessed user information of Texas residents and provided that information to third party marketing companies; Facebook sells information collected by Texas residents to third party vendors; Facebook allows advertisers to use data gathered from Facebook's proprietary software to target specific customers and demographics; using proprietary algorithms, Facebook generates targeted recommendations for each user, promoting content, websites, advertisements, users, groups, and events that may appeal to a user based on their usage history; each Facebook user has a personalized experience on Facebook and no two users have the same exact experience; Facebook sends advertisements to

4

Texas customers and advertises its services to Texas customers; Facebook derives substantial revenue from Texas; Facebook hires employees in Texas and targets potential employees in Texas, including but not limited to "managers, moderators, accountants, design specialist, IT support, lawyers, clerks, receptionists, financial advisors, insurance companies, sanitation engineers, purchasing agents, leasing agents, human resources specialists, and other employees who are integral to Facebook's operations throughout Texas and the United States"; one of the largest target segments for advertisers on Facebook is children between thirteen and seventeen years old; Doe was a Facebook user in Texas from the age of thirteen to seventeen years old; Facebook profits off advertisements directed towards minors in Texas on its platform; and "Facebook marketed its platform in Texas and actively sought out Texas as a marketplace for its platform (i.e. product)." Facebook did not deny any of these allegations in its special appearance.[4]

Doe alleged that she was "entrapped" into sex trafficking by a man that connected with her on Facebook's platform when she was fifteen years old. Doe's abuser had several friends in common with Doe and messaged her through Facebook's messaging systems. Doe alleged that Facebook knew of the dangers of sex trafficking and did not warn her of the dangers of sex trafficking on Facebook or of signs of sex traffickers on Facebook. Doe further alleged that her abuser's account contained "warning signs of human trafficking"; that the nature of the messages she received from her abuser contained "red flags" that Facebook should

---

[4] At oral argument before this court, Facebook argued that it does not provide information on Facebook users to outside third parties and that, in 2012, the only office Facebook operated in Texas was an Austin location with seven employees. However, it was Facebook's burden to negate these allegations by Doe in its special appearance. *See Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658–59 (Tex. 2010); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002); *Touradji v. Beach Cap. P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Facebook failed to do so. Thus, we must accept these allegations as true. *See Kelly*, 301 S.W.3d at 658–59; *Touradji*, 316 S.W.3d at 23.

have recognized as grooming behavior; and that should have alerted Facebook that Doe was in danger. "To date, Facebook has taken no reasonable steps to mitigate the use of Facebook by sex traffickers or exploiters using its platform."

As to Doe's claim against Facebook for violating § 98.002, Doe's petition stated that she "incorporates each foregoing allegation." Doe further stated that "Facebook had a duty not to knowingly benefit from trafficking of persons" and that Facebook breached this duty "by knowingly facilitating the sex trafficking of Doe." Doe stated that Facebook facilitated the sex trafficking of Doe by:

a. Increasing profits by not using advertising space for public service announcements regarding the dangers of entrapment, grooming, and recruiting methods used by sex traffickers on Facebook;
b. Increasing profit margins due to lower operations cost of not implementing mandatory public service announcements for those who sign up for Facebook regarding the dangers of entrapment and grooming used by sex traffickers on Facebook;
c. Increasing profit margins due to lower operation costs by not having to hire human trafficking experts to coordinate Facebook's awareness campaign regarding the dangers of entrapment and grooming used by sex traffickers on Facebook;
d. Raising advertising fees by extending its "user base" to include sex traffickers by not engaging in a public service awareness campaign regarding the dangers of entrapment and grooming used by sex traffickers on Facebook;
e. Increasing profit margins due to lower operation cost by not implementing safeguards requiring verification of the identity of all users on Facebook;
f. Increasing profit margins as a result of continued customer loyalty and therefore increased "user" numbers used to extract higher advertiser fees by creating a breeding ground for sex traffickers to stalk and entrap victims[; and]
g. The "per user" profit gained from King Kid, which is estimated yearly by Facebook as the financial value of each Facebook user.

Doe stated that "Facebook has received financial benefits as a result of these acts and omissions by continuing to facilitate human trafficking and the sexual

exploitation of minors."

## B. FACEBOOK'S SPECIAL APPEARANCE

In its special appearance, Facebook argued that Doe could not establish that Texas has either general or specific jurisdiction over Facebook. Facebook argued that it is not subject to specific jurisdiction in Texas because Doe's claims "arise from alleged omissions that took place outside of Texas, if at all[.]"According to Facebook, "there is no connection—much less a substantial connection—between Facebook's contacts with Texas and the operative facts alleged in the First Amended Petition." Facebook based this argument on the fact that, in 2012, its user operations and global safety teams, its global policy management team, and all members of Facebook's management team overseeing Facebook's global operations were located outside of Texas. In support of its special appearance, Facebook attached the affidavit of Michael Duffey, an eDiscovery and Litigation Project Lead in Facebook's legal department, as well as versions of its user agreement from 2009 through 2019.

Doe filed a response to Facebook's special appearance and Facebook filed a reply. In its reply, Facebook again argued that Doe did not connect Facebook's purposeful activity in Texas to her claimed injury. Facebook further argued that operating a website accessible in Texas cannot be a purposeful contact as a matter of law, alleged failures to act are not purposeful contacts as a matter of law, and the stream-of-commerce-plus test does not apply because Facebook is not a tangible product.

## C. TRIAL COURT'S RULING

On October 7, 2019, the trial court denied Facebook's special appearance without issuing findings of fact and conclusions of law. Facebook timely appealed.

7

## II. DISCUSSION

In two issues, Facebook argues that the trial court lacked general and specific jurisdiction over it.

### A. STANDARD OF REVIEW

Whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). The plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction. *Luciano v. SprayFoamProducts.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). The burden then shifts to the defendant to negate all bases of jurisdiction in the allegations. *Id.* Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

> The defendant can negate jurisdiction on either a factual or legal basis. Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction . . . .

*Id.* at 659 (footnotes omitted).

### B. APPLICABLE LAW

A court must have personal jurisdiction over the parties to issue a binding judgment. *Luciano*, 625 S.W.3d at 7–8. "A defendant's contacts with the forum can give rise to either general or specific jurisdiction." *Id.* at 8 (citing *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010)). If a nonresident defendant's affiliations with the state are so "continuous and systematic" as to render it

8

essentially at home in the forum state, then a court has general jurisdiction over that nonresident defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Luciano*, 625 S.W.3d at 8; *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). "By contrast, specific jurisdiction 'covers defendants less intimately connected with a State, but only as to a narrower class of claims.'" *Luciano*, 625 S.W.3d at 8 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)).

"Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal due-process guarantees." *Id.* (citing *TV Azteca*, 490 S.W.3d at 36); *see BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (noting that the Texas long-arm statute "permits Texas courts to exercise jurisdiction over nonresident defendants that 'does business' in Texas, and the statute lists some [non-exclusive] activities that constitute 'doing business.'" (citing Tex. Civ. Prac. & Rem. Code Ann. § 17.042))). "Consistent with federal due-process protections, a state may assert personal jurisdiction over a nonresident defendant only if the defendant has established 'minimum contacts' with the forum state such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Luciano*, 625 S.W.3d at 8 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see All Star Enter., Inc. v. Buchanan*, 298 S.W.3d 404, 411 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Specific jurisdiction through minimum contacts with the forum state is established when the defendant (1) purposefully avails itself of the privilege of conducting activities in the forum state, and (2) the lawsuit arises or relates to the defendant's contacts with the forum. *Luciano*, 625 S.W.3d at 8–9.

## 1. Purposeful Availment

The touchstone of jurisdictional due process is purposeful availment. *Id.* at 9. "There must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Where the defendant has 'deliberately' engaged in significant activities within a state, he 'manifestly has availed himself of the privilege of conducting business there.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)). "And because such activities are shielded by the 'benefits and protections' of the forum's laws, it is 'presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* (citing *Burger King Corp.*, 471 U.S. at 475–76).

When analyzing the defendant's contacts, courts consider the quality and nature of the contacts. *Moncrief Oil*, 414 S.W.3d at 151; *Retamco Oper., Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009); *see, e.g.*, *TV Azteca*, 490 S.W.3d at 43–52. A nonresident defendant does not need to have offices or employees in a forum state to purposefully avail itself of the forum. *Luciano*, 625 S.W.3d at 9 (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)). But, the operation of a sales and distribution network, or the directing of marketing efforts to the forum State in the hope of soliciting sales, may render a nonresident defendant subject to the State's jurisdiction in disputes arising from that business. *Id.* Alternatively, contacts that are fortuitous and attenuated do not satisfy the purposeful-availment standard. *Id.*

### a. Analysis

Doe's unchallenged allegations establish that Facebook does substantial business in Texas; serves the market for its social-networking website in Texas

10

through its employees and offices in Texas; markets its social-networking website in Texas; seeks new users in Texas; accesses and generates substantial profits from Texans' data; and purposefully directs tailored advertisements to each Texas user, of which there are millions. We conclude that the unchallenged allegations in Doe's pleading establish that Facebook purposefully avails itself of the privilege of conducting its social-networking business in Texas. *See Ford Motor Co.*, 141 S. Ct. at 1026; *Luciano*, 625 S.W.3d at 9–10; *TV Azteca*, 490 S.W.3d at 51–52.

### 2. Nexus

#### a. Applicable Law

The second prong of personal jurisdiction is "relatedness." *Luciano*, 625 S.W.3d at 14 (citing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017)); *see Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 ("When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."). "Despite a nonresident defendant's flood of purposeful contacts with the forum state, the exercise of specific jurisdiction is prohibited if 'the *suit*' does not 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*." *Luciano*, 625 S.W.3d at 14 (emphasis in original). "This so-called relatedness inquiry defines the appropriate 'nexus between the nonresident defendant, the litigation, and the forum.'" *Id.* (quoting *Moki Mac*, 221 S.W.3d at 579).

The relatedness prong does not require a causal connection. *Ford Motor Co.*, 141 S. Ct. 1022. Instead, the relatedness inquiry demands only that the suit "arise out of or relate to the defendant's contacts with the forum." *Id.* at 1026 ("[W]e have never framed the specific jurisdiction inquiry as requiring proof . . . that the plaintiff's claim came about because of the defendant's in-state conduct."); *see Luciano*, 625 S.W.3d at 15–18. "[S]pecific jurisdiction requires us to analyze

11

jurisdictional contacts on a claim-by-claim basis." *Moncrief Oil*, 414 S.W.3d at 150.

### b. Analysis

Facebook argues that the relevant policies and decisions at issue in Doe's lawsuit were made outside of Texas, and thus, Doe's lawsuit is not connected to Facebook's contacts with Texas. However, a causal connection is not required for specific personal jurisdiction. *See Ford Motor Co.*, 141 S. Ct. at 1026. Instead, the relatedness inquiry demands only that the suit arise out of or relate to the defendant's contact with the forum. *Id.*

Here, Doe alleged that: she was a Facebook user between the age of thirteen and seventeen years old and was fifteen years old in 2012; she was a victim of sex trafficking by an individual who connected with her through Facebook; Facebook's system enabled Doe's traffickers to target her; Facebook knew sex-trafficking occurred on its platform; Facebook knew that Doe was in danger and a likely target for sex trafficking; and Facebook profited from her exploitation through the use of its social-networking platform. Doe further alleged that Facebook "creat[ed] a breeding ground for sex traffickers to stalk and entrap victims"; "knowingly aided, facilitated[,] and assisted sex traffickers, including the sex trafficker who recruited Jane Doe from Facebook" and "knowingly benefitted" from the sex trafficking activity; "Facebook has assisted and facilitated the trafficking of Jane Doe and other minors on Facebook"; and that Facebook "uses the detailed information it collects and buys on its users to direct users to persons they likely want to meet" and, "[i]n doing so, . . . facilitates human trafficking by identifying potential targets, like Jane Doe, and connecting traffickers with those individuals." *In re Facebook*, 625 S.W.3d at 97–98.

Doe's cause of action for violation of § 98.002 is based on her use of

Facebook's social-networking platform and Facebook's actions related to the operation of its social-networking platform. *See* Tex. Civ. Prac. & Rem. Code Ann. § 98.002; *In re Facebook*, 625 S.W.3d at 96–97. Therefore, we conclude that Doe's suit arises from or relates to Facebook's contacts with Texas. *See Ford Motor Co.*, 141 S. Ct. at 1022 ("[W]hen a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit."); *Luciano*, 625 S.W.3d at 17 ("It is sufficient that SprayFoam intended to serve a Texas market for the insulation that the Lucianos allege injured them in this lawsuit.").

### 3. Fair Play & Substantial Justice

"Once minimum contacts have been established, we must still consider whether, for other reasons, exercising jurisdiction over the nonresident defendant would nevertheless run afoul of 'traditional notions of fair play and substantial justice.'" *Luciano*, 625 S.W.3d at 18 (quoting *Int'l Shoe*, 326 U.S. at 316; *TV Azteca*, 490 S.W.3d at 55)). "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (quoting *Spir Star*, 310 S.W.3d at 878); *TV Azteca*, 490 S.W.3d at 55.

> We consider the nonresident defendant's contacts in light of (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in furthering fundamental substantive social policies.

*Luciano*, 625 S.W.3d at 18–19.

Facebook does not argue that exercising jurisdiction over it would offend traditional notions of fair play and substantial justice or create an undue burden.

13

"[T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state." *Id.* at 19 (quoting *Int'l Shoe*, 326 U.S. at 319). "Exercise of that privilege may give rise to obligations, such as responding to suit, which cannot be said to be undue." *Id.*

As noted, Doe's unchallenged allegations in her live pleading established that Facebook has exercised the privilege of doing substantial business within Texas and enjoys the benefits and protections of the laws of Texas; thus, the burden on Facebook to defend Doe's suit is not undue. *See id.*

Further, Texas has a strong interest in protecting citizens of the State by exercising jurisdiction over these types of claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 98.002(a); *Luciano*, 625 S.W.3d at 19 ("[B]y virtue of the Legislature's enactment of the Deceptive Trade Practices Act, the statutory source of one of the Lucianos' claims, Texas has demonstrated a special interest in protecting its citizens from the sort of activity alleged here.").

Finally, Facebook does not argue that Doe's claims against the other parties have been dismissed. Texas is where the alleged sex trafficking occurred, where Doe resides, and where the majority of the witnesses are located. *See Luciano*, 625 S.W.3d at 19; *TV Azteca*, 490 S.W.3d at 56. Adjudicating Doe's claims against all defendants in one forum provides the most efficient means for resolving this controversy. *See TV Azteca*, 490 S.W.3d at 56; *Moncrief Oil*, 414 S.W.3d at 155; *Spir Star*, 310 S.W.3d at 879. We conclude that the exercise of personal jurisdiction over Facebook in this case does not offend traditional notions of fair play and substantial justice.

**4. Summary**

We conclude that Texas has specific personal jurisdiction over Facebook as

14

to Doe's § 98.002 claim. We overrule Facebook's issues on appeal.[5]

## 2. CONCLUSION

We affirm the trial court's denial of Facebook's special appearance.

/s/    Margaret "Meg" Poissant
Justice

Panel consists of Chief Justice Christopher and Justices Spain and Poissant.

---

[5] Because our conclusion that Texas has specific personal jurisdiction over Facebook is dispositive, we need not address Facebook's other arguments on appeal. *See* Tex. R. App. 47.1.