

# NUMBER 13-22-00176-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

HYUNDAM INDUSTRIAL
COMPANY, LTD.,                                     **Appellant,**

**v.**

PAUL SWACINA, AS SUCCESSOR
GUARDIAN OF THE PERSON AND
ESTATE OF JOHARI KIBIBI POWELL,
AN INCAPACITATED PERSON, AND
PAUL SWACINA AS NEXT FRIEND OF
D.A.P., D.A.C., AND D.A.C., MINOR CHILDREN,        **Appellees.**

On appeal from the County Court at Law No. 1
of Nueces County, Texas.

# OPINION

Before Chief Justice Contreras and Justices Benavides and Longoria
Opinion by Justice Longoria

Appellant Hyundam Industrial Co., Ltd. (Hyundam) appeals the trial court's order denying its second amended special appearance. Appellees Paul Swacina, as successor guardian of the person and estate of Johari Kibibi Powell, an incapacitated adult, and Paul Swacina as next friend of D.A.P., D.A.C., and D.A.C., minor children (collectively Swacina), sued Hyundam and others, alleging various causes of action after Powell was injured in an accident while driving a 2009 Hyundai Elantra. Hyundam argues that the trial court erred in denying its special appearance because: (1) Swacina's pleadings failed to allege jurisdictional facts sufficient to support general or specific jurisdiction, (2) the evidence was insufficient to support a finding of either general or specific jurisdiction, and (3) the exercise of jurisdiction over Hyundam would offend traditional notions of fair play and substantial justice. We affirm.

## I.    BACKGROUND[1]

According to Swacina's fifth amended petition, Powell was driving a 2009 Hyundai Elantra in Nueces County, Texas, which stalled in the center lane of traffic due to a fuel pump failure. Another vehicle collided into the rear of the Elantra, causing Powell to suffer serious, permanent, and disabling physical and psychological injuries, and causing Powell's children to suffer a loss of parental consortium. Swacina, on behalf of Powell and her children, sued Hyundam in Texas, alleging theories of negligence, gross negligence, misrepresentation, as well as design, manufacturing, and marketing defects, among other claims. Specifically, Swacina claimed that the fuel pump in the Elantra was designed, manufactured, marketed, assembled, and tested by Hyundam, and that failure

---

[1] As this case involves numerous and voluminous filings by the parties, we summarize only the facts pertinent to the disposition of this appeal.

2

of the fuel pump was a proximate cause of Powell and her children's injuries.[2]

In its second amended special appearance, Hyundam argued that it was not subject to general or specific personal jurisdiction in Texas. Hyundam attached an affidavit by Jinwook Chang, a managing director of the "Technical R&D Center" at Hyundam. Chang's affidavit established that Hyundam is a South Korean automobile component part manufacturer headquartered in Asan, South Korea, that designed and manufactured fuel pumps for the 2009 Hyundai Elantra for Hyundai Motor Company (Hyundai), a South Korean automobile manufacturer. According to Chang, Hyundam has no offices, manufacturing facilities, officers, directors, employees, agents, representatives, salespeople, distributers, or customers in Texas. Hyundam also has no registered agent for service of process in Texas. Hyundam's fuel pumps were designed and manufactured at its facilities in South Korea. Donghee Industries, Co. (Donghee), a South Korean fuel tank system manufacturer, purchased more than ninety-nine percent of Hyundam's fuel pumps. Donghee incorporated Hyundam's fuel pumps into its fuel tank systems, which were then sold and delivered to Hyundai in South Korea. Hyundam sold less than one percent of its fuel pumps to Hyundai Mobis Co. Ltd. (Mobis), a wholesaler and distributor of service parts to Hyundai dealers, globally.

According to Chang, once the fuel pumps left the manufacturing facility, Hyundam had no further involvement in the design, manufacture, installation, or assembly of the fuel tank system or any other component of the 2009 Hyundai Elantra. Chang attested that Hyundam had no say or involvement in Mobis's determination of where any service

---

[2] Swacina's petition also named nine other defendants in the suit, two of which are Texas residents. None of these nine other named defendants are a party to this appeal.

parts were distributed. Chang further attested that Hyundam had no control over where any vehicle containing its fuel pumps were "shipped, distributed, sold, and/or re-sold," and that Hyundam did not advertise, design, market, export, sell, or supply any products in Texas.

Hyundam also attached evidence demonstrating that the 2009 Hyundai Elantra involved in this case was originally purchased and registered in Louisiana in 2009, and was subsequently registered in Texas in 2015. In its special appearance, Hyundam argued, among other things, that the fact that the vehicle "made its way to a Texas owner" in this case was an attenuated contact with Texas and did not support personal jurisdiction. Hyundam also maintained that it "did not direct any component part or take any action specifically toward Texas at any time," "never purposefully availed itself of the privilege of transacting business in Texas," and "never attempted to serve the Texas market, specifically or generally, either directly or indirectly through agents or representatives."

Swacina filed a response to Hyundam's special appearance, arguing that the trial court had specific jurisdiction over Hyundam because its contacts with Texas demonstrated "purposeful availment" of the privilege of doing business in the state. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).[3] Swacina argued that Hyundam placed the fuel pumps into the stream of commerce directly and indirectly through Hyundai, and that Hyundam engaged in additional conduct indicating it

---

[3] Swacina did not argue that Hyundam's contacts with Texas were continuous and systematic so as to constitute general jurisdiction. *See M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017) (noting that general jurisdiction is established when a defendant's contacts with the state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State").

intended to serve the Texas market. Swacina attached evidence to his response which he claimed established that: (1) Hyundam had an English language website accessible in Texas; (2) Hyundam knew that Hyundai vehicles containing their fuel pumps were sold in the United States, including Texas; (3) Hyundam had a business relationship with and sold its fuel pumps to Mobis, which provided Hyundam's fuel pumps to Hyundai dealers globally, including Texas, as after-sale service parts; (4) Hyundai sold over 97,000 Elantras containing Hyundam's fuel pumps in the United States in 2009; (5) Hyundam's fuel pumps for a 2009 Hyundai Elantra are readily available for purchase through Hyundai dealerships in Texas; and (6) Hyundam was a "settling defendant" in a national class action lawsuit concerning its parts pricing.

On the same day, Swacina also filed a motion raising various objections to Chang's affidavit and requesting the trial court to strike it. Among other things, Swacina argued that Chang's affidavit was not based on personal knowledge. Hyundam later filed a response to Swacina's motion, and the trial court signed an order overruling Swacina's objections to Chang's affidavit and denying Swacina's request to strike. Hyundam then filed its reply to Swacina's response to its special appearance.

The trial court held a hearing on Hyundam's special appearance on March 1, 2022. After arguments from the parties, the trial court pronounced that it was going to deny the special appearance. The trial court signed an order denying Hyundam's special appearance on March 28, 2022. This interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7).

5

## II.    PERSONAL JURISDICTION

### A.    Standard of Review & Applicable Law

"Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo." *Old Republic Nat'l Title Ins. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018) (cleaned up). When, as here, a trial court does not issue findings of fact and conclusions of law with its ruling on a special appearance, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Id.*

Texas courts may exercise personal jurisdiction over a nonresident defendant if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Id*. The Texas long-arm statute is satisfied if the nonresident defendant "does business" in this State. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. The statute's "broad language" extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *PHC-Minden*, 235 S.W.3d at 166. Therefore, "the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations." *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). The Texas long-arm statute is also satisfied if, "[i]n addition to other acts that may constitute doing business," a nonresident "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. "However, allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution." *Bell*, 549 S.W.3d at 559.

"[F]ederal due process requires that the nonresident must have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A nonresident establishes minimum contacts with a forum when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Moki Mac*, 221 S.W.3d at 575 (first citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); and then citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005)). "[T]he defendant's in-state activities 'must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court.'" *Bell*, 549 S.W.3d at 559 (cleaned up). "This minimum contacts inquiry is a forum-by-forum or sovereign-by-sovereign analysis that examines the nature and extent of the defendant's relationship to the forum to determine whether the defendant is amenable to general or specific jurisdiction." *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023) (cleaned up) (footnotes omitted).

When determining whether a defendant has purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Bell*, 549 S.W.3d at 559 (quoting *Moncrief Oil, Int'l, Inc. v. OAO Gazprom*, 414 SW.3d 142, 151 (Tex. 2013); *see also TV Azteca v. Ruiz*, 490 S.W.3d 29, 38 (Tex. 2016) (stating

that defendant's contacts must be "purposefully directed" towards Texas and "must result from the defendant's own efforts to avail itself of the forum"). A nonresident may purposefully avoid a jurisdiction "by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction." *Michiana*, 168 S.W.3d at 785. "We assess the quality and the nature of the contacts, not the quantity." *TV Azteca*, 490 S.W.3d at 38.

A defendant's contacts may give rise to general jurisdiction or specific jurisdiction. *Bell*, 549 S.W.3d at 559. As relevant here, the minimum contacts necessary for specific jurisdiction are established if (1) the defendant purposefully avails itself of the privilege of conducting activities in the forum state, and (2) the suit arises out of or relates to the defendant's contacts with the forum. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8–9 (Tex. 2021).

"In cases involving products liability, [the Supreme] Court [of Texas] has adopted the 'stream-of-commerce-plus' standard to establish whether this purposeful availment exists." *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 347 (Tex. 2023).

> Under a stream-of-commerce-plus framework, a nonresident who places products into the stream of commerce *with the expectation that they will be sold in the forum state* may be subject to personal jurisdiction in the forum. In contrast, *mere foreseeability* that a product might ultimately end up in a particular forum does not alone constitute purposeful availment. When the stream of commerce only fortuitously deposits a product in the forum state, a nonresident manufacturer will be subject to the forum's jurisdiction only if additional conduct—often referred to as a "plus factor"—evinces the manufacturer's intent to serve that market. This analytical construct is frequently used in products-liability cases to determine whether specific jurisdiction exists. When a nonresident manufacturer has no knowledge, care, or control over where a product ends up, this and other courts require some "plus factor" to establish purposeful availment. Examples include marketing the product through a distributor who has agreed to serve as the

8

sales agent in the forum state or creating, controlling, or employing the distribution system that brought the product into the forum state.

*Volkswagen*, 669 S.W.3d at 417 (cleaned up) (footnotes omitted). Other examples of additional conduct include: (1) designing the product for the market in the forum state, (2) advertising in the forum state, and (3) establishing channels for providing regular advice to customers in the forum state. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010).

Because personal jurisdiction requires a forum-by-forum analysis, we look only to Hyundam's behavior directed toward Texas, not its behavior directed elsewhere. *See Volkswagen*, 669 S.W.3d at 420 (first citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality op.); and then citing *Luciano*, 625 S.W.3d at 10). The logical consequence is that the lack of differentiation in the nature and kind of conduct directed at other jurisdictions does not negate Hyundam's purposeful availment of this one. *See id.*

> The defendant need not single Texas out in some unique way to satisfy constitutional dictates. To hold that a nonresident who has directed activity to every state is not amenable to jurisdiction in any state would unduly constrain the authority of state courts to hold nonresidents accountable for their in-state conduct and would convert the specific-personal-jurisdiction analysis into a wholly subjective inquiry into the defendants' state of mind.
>
> . . . .
>
> Neither the federal nor the state constitution requires us to adopt a rule insulating nonresident defendants from personal jurisdiction arising from or related to their Texas-based contacts merely because the defendant has targeted other states in a similar manner. Rather, the critical inquiry is whether a nonresident defendant has established sufficient contacts with Texas—not whether those contacts are materially different from its contacts with other states.

*Id.* at 420–21.

The "arises from or relates to" element of specific jurisdiction requires a nexus between the nonresident defendant, the litigation, and the forum state. *Luciano*, 625 S.W.3d at 14. The Texas Supreme Court has held that this "relatedness" requirement is satisfied by a substantial connection between the nonresident defendant's contacts and the operative facts of the litigation. *Id*. Operative facts are those facts that "will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question." *Moki Mac*, 221 S.W.3d at 585.

When personal jurisdiction is challenged, the plaintiff and the nonresident defendant bear shifting burdens of proof. *Bell*, 549 S.W.3d at 559. The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the scope of Texas's long-arm statute. *Id*.; *see also Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010) ("Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading."). The trial court may consider the plaintiff's original pleadings as well as his response to the defendant's special appearance in determining whether the plaintiff satisfied his initial burden. *Touradji v. Beach Cap. P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citation omitted). "In conducting our review, we accept as true the allegations in the petition." *Id.* at 23. If the plaintiff fails to plead facts bringing the defendant within the reach of the long-arm statute, "the defendant need only prove that it does not live in Texas to negate jurisdiction." *Kelly*, 301 S.W.3d at 658–59.

If the plaintiff meets his initial pleading burden, the burden shifts to the nonresident defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Bell*, 549 S.W.3d at 559. The defendant can negate jurisdiction on either a factual or a legal basis. *Kelly*, 301 S.W.3d at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* The plaintiff can then respond with his own evidence affirming his allegations, and if he does not present evidence establishing personal jurisdiction, he risks dismissal of his suit. *Id.* Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; that the defendant's contacts with Texas do not constitute purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts with Texas; or that the exercise of jurisdiction offends traditional notions of fair play and substantial justice. *Id.*

## B.     Objections to Chang's Affidavit

In a cross-issue, which we address first, Swacina argues that Chang's affidavit was not based on personal knowledge as required under the rules of civil procedure, and therefore, the trial court abused its discretion in overruling his objections to Chang's affidavit and denying his motion to strike.

We review a trial court's evidentiary ruling, such as its ruling on a motion to strike an affidavit, for an abuse of discretion. *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 727 (Tex. 2016). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012).

Under Rule 120a, any party may file a special appearance "for the purpose of objecting to the jurisdiction of the court over the person . . . on the ground that such party . . . is not amenable to process issued by the courts of this State." TEX. R. CIV. P. 120a(1). Rule 120a further states

> The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony. The affidavits, if any, shall be served at least seven days before the hearing, shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify.

*Id.* § 120a(3). An affiant's acknowledgment of the sources from which he gathered his knowledge does not violate the personal knowledge requirement. *See In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 224 (Tex. 2004).

Here, Chang's affidavit states the facts in his affidavit are true and correct and based on his personal knowledge. Swacina characterizes this assertion as conclusory, and "insufficient as it contains nothing about the time, place, or exact nature of his position nor the steps, if any, he took to obtain any personal knowledge." But, in his affidavit, Chang attests that the basis of his personal knowledge is derived from his seventeen years of experience and employment with Hyundam, during which he served as a technician, officer, and director. Chang further details the relevant time period he was active in each role, the duties and responsibilities in his capacity as to each role, and the different knowledge he gained in each role. Chang also states that he "reviewed Hyundam['s ]documents maintained in the ordinary course of business regarding the design and manufacture of the fuel pumps by Hyundam[ ]for Donghee[ ], to be supplied

12

to Hyundai[ ]in South Korea for the 2009 year model Hyundai Elantra." In other words, Chang set forth specific facts showing affirmatively that he is competent to testify as required by Rule 120a(3). *See* TEX. R. CIV. P. 120a(1); *see also M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 407 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.) ("[A] corporate officer may testify that information concerning the corporation's contacts with a given state is within his personal knowledge without showing with particularity how he acquired that knowledge."). We conclude Chang's affidavit made a sufficient showing of personal knowledge. *See id.*

Accordingly, the trial court did not abuse its discretion in overruling Swacina's objection to Chang's affidavit. *See Waldrip*, 380 S.W.3d at 132. We overrule Swacina's sole cross-issue.

## C. Special Appearance

### 1. Jurisdictional Facts

In its first issue, Hyundam argues that Swacina's petition did not meet his initial burden in "properly pleading jurisdictional facts—including those that would implicate 'personal jurisdiction' over a foreign entity . . . ."

As the plaintiff, Swacina bore the initial burden to plead sufficient allegations to bring Hyundum, the nonresident defendant, within the scope of Texas's long-arm statute. *See Bell*, 549 S.W.3d at 559. "This notice-pleading requirement is 'minimal' and 'can be satisfied with an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas.'" *Copeland v. Mayers*, 657 S.W.3d 599, 609–10 (Tex. App.—El Paso, 2022 pet. denied) (quoting *Gaddy v. Fenenbock*, 652 S.W.3d 860, 871

13

(Tex. App.—El Paso 2022, no pet.)); *see also Steward Health Care System LLC v. Saidara*, 633 S.W.3d 120, 129 (Tex. App.—Dallas 2021, no pet.) ("A plaintiff's petition satifies the long-arm statute when it alleges the defendant did business, which includes committing a tort in whole or in part in Texas."); *Lombardo v. Bhattacharyya*, 437 S.W.3d 658, 679 (Tex. App.—Dallas, 2014 pet. denied) (holding that the appellee's allegations that appellant committed torts in Texas was sufficient to satisfy appellee's initial burden of alleging a cause of action sufficient to confer jurisdiction under the Texas long-arm statute); TEX. CIV. PRAC. & REM. CODE ANN. § 17.042.

In his fifth amended petition, Swacina alleged that on or about March 15, 2018, Powell operated a 2009 Hyundai Elantra in Nueces County, Texas, which "became disabled in the center lane of traffic due to a fuel pump failure." Subsequently, another vehicle "collided with the rear of the disabled [Elantra] operated by [Powell]", causing Powell to suffer serious, permanent, and disabling physical and psychological injuries, and causing Powell's children to suffer a loss of parental consortium. Swacina also alleged that Hyundam "is a foreign corporation doing business th[r]ough out the United States, including Texas, for profit" and that "the fuel pump of the subject vehicle" was "designed," "manufactured", "marketed", and "assembled and tested" by Hyundam. Swacina further alleged that "[Hyundam is] subject to the Texas long-arm statute by committing torts where one or more elements of the tort or one of more of the tortious acts occurred in Texas," and detailed Hyundam's role as a party to Swacina's various causes of action. Finally, Swacina alleged that the "acts and omissions" of Hyundam "constitutes the direct, proximate, producing and/or substantial cause of Plaintiffs' injuries

14

and damages." Liberally construing Swacina's pleading, we conclude that Swacina's allegations that Hyundam does business in Texas and that the plaintiffs suffered injuries in Texas due to a defective fuel pump designed, manufactured, marketed, and assembled and tested by Hyundam are sufficient to bring Hyundam under the long-arm statute.[4] *See Bell*, 549 S.W.3d at 559; *Copeland*, 657 S.W.3d at 609–10; *Steward Health Care Sys. LLC*, 633 S.W.3d at 129; *Lombardo*, 437 S.W.3d at 679; *see also* TEX. CIV. PRAC. & REM. CODE § 17.042. We overrule Hyundam's first issue.

### 2. Purposeful Availment

In its second issue, Hyundam argues the evidence was insufficient to support a finding of specific jurisdiction.[5]

In support of its special appearance, Hyundam attached Chang's affidavit which admitted that Hyundam designed and manufactured fuel pumps for the 2009 Hyundai Elantra in South Korea. Chang explained that ninety-nine percent of these fuel pumps were sold and delivered to Donghee in South Korea, which incorporated Hyundam's fuel pumps into Donghee's fuel tank systems; Donghee, in turn, assembled, sold, and delivered its fuel tank systems to Hyundai in South Korea. According to Chang, Hyundam

---

[4] We note that although we have concluded that Swacina pleaded sufficient allegations under the long-arm statute, the mere allegation that a tort occurred in Texas does not support jurisdiction over a nonresident defendant under the Due Process Clause, which requires that the nonresident defendant purposefully avail itself of the forum state's jurisdiction. *See Michiana*, 168 S.W.3d at 788, 791–92 ("Allegations that a tort was committed in Texas satisfy the Texas Long–Arm Statute, but not necessarily the U.S. Constitution; the broad language of the former extends only as far as the latter will permit. . . .[W]e disapprove of those opinions holding that . . . specific jurisdiction turns on whether a defendant's contacts were tortious rather than the contacts themselves.").

[5] Hyundam also argues by its second issue that the evidence was insufficient to support general jurisdiction. However, as noted, Swacina did not argue general jurisdiction at the trial court, and he does not do so on appeal. *Cf. Dodd v. Savino*, 426 S.W.3d 275, 284 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("A defendant challenging a Texas court's personal jurisdiction must negate every jurisdictional basis that is alleged." (emphasis added)). Accordingly, we confine our analysis to specific jurisdiction.

15

had no control over where any vehicle containing its fuel pumps were "shipped, distributed, sold, and/or re-sold." Chang also denied that Hyundam advertised, designed, marketed, exported, sold, or supplied any products in Texas. *See Kelly*, 301 S.W.3d at 659 (stating defendant can negate jurisdiction on factual basis by "present[ing] evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations").

Chang averred in his affidavit that the 2009 Hyundai Elantra involved in this case was assembled in South Korea in November 2008. We note that Chang's affidavit did not deny that the 2009 Hyundai Elantra involved in this case contained a fuel pump manufactured by Hyundam. Hyundam also attached to its special appearance a history report of the particular vehicle involved in this case, which demonstrated that it was originally shipped by Hyundai from South Korea to Louisiana, where it was sold and registered in 2009. The report also showed that the vehicle was subsequently registered in Texas in 2015.

The parties do not dispute that Hyundam is a nonresident corporation headquartered in South Korea, or that Hyundam placed its fuel pumps into the stream of commerce. Swacina argues in his brief that Hyundam "knowingly and intentional[ly] designed the fuel pumps to be compliant with U.S. specifications so that they could be sold in all fifty states," pointing to the following deposition testimony that Swacina attached to his response to Hyundam's special appearance:

[Counsel for Swacina]: And, to your knowledge, Hyundam at least— and farther back than 2009, Hyundam sold vehicles that—excuse me—Hyundai sold vehicles that contained Hyundam fuel module pumps that were destined for sale in the United States.·Correct?

16

|                        | . . . . |
|------------------------|---------|
| [Chang]:               | Yes.    |
| [Counsel for Swacina]: | And it'd be—it would be an accurate statement that Hyundam certainly had knowledge that its fuel pumps were being put into Hyundai vehicles and those vehicles were being sold in the United States. Correct? |
| [Chang]:               | So the information that we knew about is that we developed and delivered our products to satisfy specification for North America. Now, as U.S. is included in [the] North American region, it will be expected or assumed that they would also go to the U.S. . . . [W]hat we delivered is based on specification for the [sic] North America. |
| [Counsel for Swacina]: | So, yes, Hyundam knew that Hyundai was selling vehicles with fuel modules built by Hyundam and they were being sold in North America, which included the United States. Correct? |
|                        | . . . . |
| [Chang]:               | Yes, that's correct. |
| [Counsel for Swacina]: | And Texas is in the United States of America. Correct? |
| [Chang]:               | Yes, Texas is within the United States. |

Swacina argues that "designing the product for sale in every state is the same thing as designing it for sale in each individual state and the character of that purposeful act is not altered by the fact that the manufacturer anticipat[es] benefiting from national sales throughout the U.S."

17

Swacina also argues, among other things, that Hyundam directly served the Texas market by "selling after-market OEM replacement fuel pumps, placing them in the hands of Texas dealerships who could retail them directly to Texas customers who needed a new fuel pump for their Hyundai vehicles." In his response to Hyundam's special appearance, Swacina provided an affidavit by Peter Sullivan, who testified that on July 21, 2020 his "general manager" purchased an "exemplar, replacement part, fuel[ pump]" manufactured by Hyundam, which "was exported out of South Korea, imported into the United States, and ultimately retailed in the State of Texas by Hub Hyundai, a franchised Hyundai dealership in the Houston, Texas area." Swacina also attached photos provided by Sullivan depicting the "exemplar, replacement part, fuel[ pump]" he purchased from Hub Hyundai.

In response, Hyundam argues that it did not "design a product for the Texas consumer *in particular*"; that Chang's affidavit demonstrates that "Mobis was not hired by Hyundam[ ]to distribute its parts in Texas, nor is even Mobis itself alleged to have any representatives in Texas"; and that "[Mobis] chooses of its own accord to distribute the fuel pumps, along with other parts, to various Hyundai dealers in the United States and around the world." (Emphasis added).

In *Spir Star*, a products liability case, the Texas Supreme Court found that a foreign manufacturer was amenable to specific jurisdiction in Texas because it had marketed its product through an independent distributor who "agreed to serve as the sales agent" in Texas. 310 S.W.3d at 875. Similarly, the Texas Supreme Court held in *Luciano* that an out-of-state manufacturer was subject to specific jurisdiction in Texas because it

18

employed an independent-contractor sales agent who served as the manufacturer's "boots on the ground" in marketing and selling its products in Texas. 625 S.W.3d at 12.

Chang's affidavit explained that Hyundam sold less than one percent of its fuel pumps to Mobis, a South Korean company and global wholesaler and distributor of service parts to Hyundai dealers. According to Chang, Hyundam sold the fuel pumps to Mobis in South Korea, and it did not direct where Mobis distributed the fuel pumps as service parts. We observe that Sullivan's affidavit does not provide information regarding how the Houston dealership obtained the "exemplar, replacement part, fuel[ pump]"—i.e., whether the fuel pump was shipped directly to the dealership from Hyundai, Hyundam, Mobis, or some other distributor. Nor does Sullivan's affidavit demonstrate that Hyundam has a sales-distribution agreement with the Houston dealership, or any other Hyundai dealership in Texas. Though Swacina has provided evidence through Sullivan's affidavit that Hyundam's fuel pumps are available for purchase from at least one Hyundai dealership in Texas, that same evidence does not show directly that Hyundam acted through a "distributor-intermediary" or an agent with "boots on the ground" to intentionally target Texas as the marketplace for its fuel pumps. *See Spir Star*, 310 S.W.3d at 875; *Luciano*, 625 S.W.3d at 12; *see also Bell*, 549 S.W.3d at 559 (holding that, in determining purposeful availment, "only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person").

"It is less clear whether a nonresident 'purposefully avails' itself of a forum when it benefits from a major market without doing any of the marketing." *Michiana*, 168 S.W.3d at 786. However, Texas courts have held that "additional conduct," such as "designing

19

the product for . . . the forum State," is required to establish purposeful availment. *Id.* Under *Spir Star*, designing a product for the market in the forum state constitutes 'additional conduct' demonstrating an intent to serve the market of the forum state. *Spir Star*, 310 S.W.3d at 873. Chang's deposition testimony demonstrates that Hyundam developed its fuel pumps "to satisfy specification for North America," that the "U.S. is included in [the] North American region," and that "Texas is within the United States." This testimony indicates that Hyundam did not just have "mere foreseeability" that its fuel pumps might ultimately end up in Texas. *See Volkswagen*, 669 S.W.3d at 417. Instead, Chang's deposition testimony demonstrates that the fuel pump was also *designed for* Texas consumers as part of the "North American region." *See Spir Star*, 310 S.W.3d at 873. Texas is part of the "North American region." The fact that the "North American region" also includes markets other than Texas is of no consequence because Hyundam need not "single Texas out in some unique way to satisfy constitutional dictates." *See Volkswagen*, 669 S.W.3d at 420 ("To hold that a nonresident who has directed activity to every state is not amenable to jurisdiction in any state would unduly constrain the authority of state courts to hold nonresidents accountable for their in-state conduct and would convert the specific-personal-jurisdiction analysis into a wholly subjective inquiry into the defendants' state of mind."). We hold that Hyundam purposefully availed itself of the privilege of doing business in Texas.

### 3. "Relatedness" Requirement

Hyundam also argues that specific jurisdiction is not established because Swacina did not demonstrate that his claims arose from Hyundam's contacts with Texas.

20

Hyundam's argument is predicated on the assumption that there was no "additional conduct" establishing purposeful availment, which we rejected in the previous section. We look to the relation between Hyundam's contacts with Texas and the plaintiff's claims. *See Luciano*, 625 S.W.3d at 14.

In *Luciano*, the Texas Supreme Court recently discussed the United States Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. ____, 141 S. Ct. 1017, 1028 (2021), which involved two consolidated products liability cases stemming from car accidents involving Ford vehicles. *See Luciano*, 625 S.W.3d at 15. Though Ford conceded purposeful availment, it nevertheless "contended that specific jurisdiction was lacking because the particular cars involved were originally sold outside the forum state and were neither designed nor manufactured there." *Id.* (citing *Ford Motor Co.*, 141 S.Ct. at 1022–23). The Texas Supreme Court summarized *Ford Motor Co.* as follows:

> Ford argued that a state court would have jurisdiction only if the company's conduct in the state "gave rise to" the plaintiff's claims, a causal link that exists only if the company designs, manufactures, or sells the particular vehicle involved in an accident in the forum state. [*Ford Motor Co.*, 141 S.C ]at 1023, 1026. The place of accident or injury becomes immaterial. *See id.* at 1023.
>
> The Supreme Court rejected that argument, holding that "when a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Id.* at 1022. A "causation-only approach finds no support in [the] Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities." *Id*. at 1026 (citing *Bristol-Myers*[ *Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1776 (2017)]). Instead, due process demands that a suit "arise out of or relate to" the defendant's contacts with the forum. *Id.* (quoting *Bristol-Myers*, 137 S. Ct. at 1780).

*Id.* Here, the fuel pump which Hyundam designed for use in Texas was the very same type of fuel pump that Swacina alleged failed and proximately caused the plaintiffs' injuries in Texas. *See Ford Motor Co.*, 141 S. Ct. at 1022. Under these operative facts, "there is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Id.* at 1028*; see Luciano*, 625 S.W.3d at 14. We conclude that the trial court properly determined that it had personal jurisdiction over Hyundam in this case. *See Luciano*, 625 S.W.3d at 8–9. We overrule Hyundam's second issue.

### III.  FAIR PLAY AND SUBSTANTIAL JUSTICE

In its third issue, Hyundam argues that the exercise of jurisdiction over Hyundam would offend traditional notions of fair play and substantial justice.

"Once minimum contacts have been established, we must still consider whether, for other reasons, exercising jurisdiction over the nonresident defendant would nevertheless run afoul of 'traditional notions of fair play and substantial justice.'" *Volkswagen*, 669 S.W.3d at 432. "While this catchphrase is 'well known to appellate courts,' it is nonetheless 'imprecise.'" *Id.* (quoting *Spir Star*, 310 S.W.3d at 872). "When a nonresident defendant has minimum contacts with the forum, 'rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice.'" *Id.* (quoting *Moncrief Oil*, 414 S.W.3d at 154–55). "To avoid jurisdiction, the defendant would have to present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Id.* (quoting *Guardian Royal Exch. Assurance, Ltd. v. Eng. China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

22

We undertake this evaluation in light of the following factors, when appropriate: (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies. *Moncrief Oil*, 414 S.W.3d at 155 (citing *Spir Star*, 310 S.W.3d at 878).

Hyundam's argument is premised on its earlier contentions regarding the lack of evidence showing that Hyundam purposefully availed itself to Texas or that Swacina's claims related to Hyundam's contacts with Texas, which we have already rejected. Hyundam also argues that its "headquarters and all of its employees are located in South Korea. It has no employees or representatives in the state of Texas and the suit would require any relevant witnesses to travel halfway across the globe." We find this unpersuasive because the same or similar could be said of virtually all nonresident defendants being hauled into state court. "Distance alone cannot ordinarily defeat jurisdiction." *Id.* (citing *Spir Star*, 310 S.W.3d at 879).

The fact that Hyundam may be burdened by litigation in Texas is somewhat mitigated by the convenience to appellees, Texas residents, in litigating in the forum where the alleged fuel pump failure and subsequent car accident occurred. *See id.* Moreover, the allegations that Hyundam committed torts in Texas against a resident implicate a serious state interest in adjudicating the dispute. *See id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory.")). Finally,

23

because these claims will be litigated alongside two other named defendants, also Texas residents, in a Texas court, it promotes judicial economy to litigate the claims as to all parties in one court. *See Spir Star*, 310 S.W.3d at 879 ("[B]ecause the claims against [the resident defendant] will be heard in Texas, it would be more efficient to adjudicate the entire case in the same place.").

On balance, the burden on Hyundam to litigate in a foreign jurisdiction is minimal and outweighed by Texas's interests in adjudicating the dispute. *See id.* at 879–80. We conclude that asserting personal jurisdiction over Hyundam comports with traditional notions of fair play and substantial justice. We overrule Hyundam's final issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Delivered and filed on the
30th day of November, 2023.

24